RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0189p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

DWIGHT MORRISON,

                         *Petitioner,*

        *v.*

TENNESSEE CONSOLIDATED COAL COMPANY;
A. T. MASSEY; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES,

                        *Respondents.*

No. 10-3008

On Petition for Review of an Order
of the Benefits Review Board.
No. 09-0239 BLA.

Decided and Filed: July 15, 2011

Before: COOK, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Ronald E. Gilbertson, HUSCH BLACKWELL, Washington, D.C., Michelle S. Gerdano, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. Dwight Morrison, Whitwell, Tennessee, pro se.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. Petitioner Dwight Morrison appeals an order of the Benefits Review Board ("Board") affirming a decision of an Administrative Law Judge ("ALJ") denying Morrison's claim for benefits under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901, *et seq.* For the reasons that follow, we vacate the order of the Board, and remand for further proceedings consistent with this opinion.

I.

Morrison was born in 1953. He worked primarily as an underground surveyor for respondent, Tennessee Consolidated Coal Company ("TCCC"), from May of 1975 until September of 1997, when he was laid off as part of a reduction in force. After he was laid off, Morrison worked for another five months in a non-coal mine position. He thus established a total of twenty-two years and four months of coal mine employment.

Morrison filed his first claim for black lung benefits on September 21, 1998. Pete Soteres, M.D., examined Morrison on behalf of the Department of Labor ("DOL") on December 14, 1998, in connection with this first claim. The claim was denied by the district director on February 16, 1999, on the ground that Morrison failed to establish any of the medical elements of entitlement. Morrison did not appeal.

On February 22, 2007, Morrison filed the instant claim. Two physicians submitted medical opinions in connection with this subsequent claim: Suresh Enjeti, M.D., and Anuj Chandra, M.D., D.A.B.S.M. In addition, the record contains three interpretations of two x-rays taken on December 14, 1998, and April 16, 2007.

Nicholas Sargent, M.D., a B-reader and Board-certified radiologist,[1] and Dr. Soteres, a physician with no radiological qualifications, interpreted Morrison's December 14, 1998, x-ray as negative for pneumoconiosis. Dr. Enjeti, a physician with no radiological qualifications, rendered the only substantive interpretation of Morrison's April 16, 2007, x-ray.[2] In completing the x-ray reading form, Dr. Enjeti checked "no" in response to the question: "Is Film Completely Negative?" In addition, he marked "no" in response to "any parenchymal abnormalities consistent with pneumoconiosis?"

---

[1]A board-certified radiologist is a physician who is certified "in radiology or diagnostic roentgenology by the American Board of Radiology, Inc. or the American Osteopathic Association." 20 C.F.R. § 718.202(a)(1)(ii)(C). A B-reader is "a physician who has demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality and in the use of the ILO–U/C classification for interpreting chest roentgenograms for pneumoconiosis and other diseases by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Safety and Health." 20 C.F.R. § 718.202(a)(1)(ii)(E).

[2]Peter Barrett, M.D., a B-reader and Board-certified radiologist, interpreted the April 16, 2007, x-ray for quality only.

and noted "not sure." He indicated, by checking the "no" box, that there were no pleural abnormalities consistent with pneumoconiosis. In the comment section he noted: "1x2 cm density right mid lung; plate-like atelectasis left lower lung."

The DOL provided Morrison with two pulmonary examinations, one in connection with each of his claims for benefits. The first was on December 14, 1998, by Dr. Soteres, who conducted a physical examination, chest x-ray, blood gas studies, pulmonary function testing, and an electrocardiogram. Dr. Soteres diagnosed "SOB [shortness of breath] of unknown etiology," but opined that Morrison suffered no impairment.

On April 16, 2007, Dr. Enjeti examined Morrison in connection with his subsequent claim for benefits. Like Dr. Soteres, he performed a chest x-ray, a pulmonary function study, and an arterial blood gas study. The pulmonary function study produced an FEV1 value of 2.23 L/s, an FVC value of 2.61 L, and FEV1/FVC ratio of 86. After the administration of bronchodilator medication, the study determined an FEV1 value of 1.53 L/s, an FVC of 1.79 L, and an FEV1/FVC ration of 85. While the study itself states that the "[s]pirometry data is acceptable and reproducible," Dr. Enjeti noted in his written report a "nonreproducable effort," presumably in reference to the pulmonary function test. Dr. Enjeti interpreted the test as showing a "moderate restrictive lung disease."

Based on his examination, Dr. Enjeti diagnosed: "(1) restrictive lung disease, (2) right mid lung density, (3) bilateral hilar adenopathy." He attributed Morrison's restrictive lung disease to "body habitus," but did not opine on the etiology of Morrison's right mid-lung density or bilateral hilar adenopathy. Dr. Enjeti concluded that Morrison showed no signs of impairment from any of these diagnoses.

In addition to the two DOL ordered opinions, the record contains a 2007 opinion by Dr. Chandra. He conducted a sleep study of Morrison and diagnosed "sleep-disordered breathing / obstructive sleep apnea." In his report, Dr. Chandra also noted "a history of COPD [chronic obstructive pulmonary disease] and exposure to coal" and

a "history of black lung[.]"  However, Dr. Chandra did not provide any medical documentation in support of these notations.

On October 29, 2008, the ALJ issued a decision and order denying benefits.  The ALJ found that none of the x-ray interpretations were positive for pneumoconiosis under 20 C.F.R. § 718.202(a)(1).  He also weighed the medical opinion evidence under 20 C.F.R. § 718.202(a)(4), and found that Drs. Soteres and Enjeti did not make a diagnosis of clinical or legal pneumoconiosis.  "In the case of Dr. Chandra's sleep study," the ALJ found that "no objective medical evidence supports a diagnosis of COPD or pneumoconiosis."  Moreover, the ALJ noted that "Dr. Chandra did not diagnose [Morrison] with clinical or legal pneumoconiosis."

The ALJ also addressed the issue of disability under 20 C.F.R. § 718.202(b)(2), and concluded that Morrison established a totally disabling respiratory impairment based solely on the post-bronchodilator results of Dr. Enjeti's April 16, 2007, pulmonary function study.  However, because Morrison did not establish that he had pneumoconiosis, the ALJ determined that Morrison could not show that his total disabling condition was a result of pneumoconiosis.  Consequently, the ALJ ruled that Morrison had failed to meet his burden of demonstrating an entitlement to benefits.

Morrison appealed to the Benefits Review Board.  The Board considered the ALJ's weighing of the x-ray and medical opinion evidence, and concluded that substantial evidence supported the ALJ's finding that these sources did not establish the existence of pneumoconiosis.  Having affirmed the ALJ's ruling on the issue of pneumoconiosis, an essential element of entitlement under the Act, the Board affirmed the ALJ's denial of benefits.  As a result, the Board declined to address the employer's contentions of error regarding the ALJ's finding of total disability.

Morrison now timely appeals.

II.

We review the Board's legal conclusions de novo. *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir. 1996). While we must affirm the Board's decision "if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations[,]"our review on appeal is "focused on whether the ALJ – not the Board – had substantial evidence upon which to base his . . . decision." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997). The ALJ's findings are conclusive if they are supported by substantial evidence and are in accord with the applicable law. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[I]n referring to a singular reasonable mind, the Supreme Court has directed us to uphold decisions that rest within the realm of rationality; a reviewing court has no license to set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999) (citations and internal quotation marks omitted).

Where the substantial evidence requirement is satisfied, we may not set aside the ALJ's findings, "even if we would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985). In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence. *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Director, OWCP*, 58 F. App'x 184, 201 (6th Cir. 2003) (citing *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000), and *Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)).

III.

To establish entitlement to benefits, the claimant must prove by a preponderance of the evidence that (1) he has pneumoconiosis;[3] (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis. *See* 20 C.F.R. §§ 718.202-204 (2000); *Adams v. Director, OWCP*, 886 F.2d 818, 820 (6th Cir. 1989). The regulations provide four methods of establishing the existence of pneumoconiosis: (1) by chest x-ray; (2) by autopsy or biopsy evidence; (3) by certain presumptions described in 20 C.F.R. §§ 718.304-718.306; or (4) by reasoned medical opinion. 20 C.F.R. § 718.202.

After the ALJ and Board decisions in this case, Congress amended the Black Lung Benefits Act. *See* Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 1556, 124 Stat. 119 (2010). The amendment revived a statutory presumption and made it retroactive to claims filed after January 1, 2005, that were pending on or after March 23, 2010 (the date of enactment of the amendments). Under the rebuttable presumption, a miner who worked underground for at least fifteen years and who demonstrates that he suffers from a total respiratory disability is presumed to be totally disabled due to pneumoconiosis. *See* 30 U.S.C. § 921(c)(4).

The Director of the Office of Workers' Compensation Programs has filed a brief, arguing that the Board's decision should be vacated and the case remanded for reconsideration of the claim in light of this amendment. Specifically, because Morrison's February 22, 2007, claim was filed and pending within the applicable time

---

[3] Pneumoconiosis is a dust disease of the lungs arising out of employment in the coal mines, a disease more commonly known as "black lung." 30 U.S.C. § 902(b). The defining characteristic of pneumoconiosis for the purpose of the Act is that its symptoms arise as a consequence of being exposed to dust while working in coal mines. *See* 20 C.F.R. § 718.201(b) (explaining that "a disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment").

It includes both "[c]linical" pneumoconiosis and "[l]egal" pneumoconiosis. 20 C.F.R. § 718.201(a). The regulations define clinical (or medical) pneumoconiosis as "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

period, Morrison worked underground for more than twenty-two years, and the ALJ found Morrison to be totally disabled, the Director maintains that the PPACA entitles Morrison to a rebuttable presumption that his total disability is due to pneumoconiosis. We agree.

Under the PPACA, which revives the 15-year presumption, the burden of production and persuasion lies on the employer, TCCC, to rebut the presumption of disability due to pneumoconiosis. 30 U.S.C. § 921(c)(4); *see also Blakely v. Amax Coal Co.*, 54 F.3d 1313, 1320 (7th Cir. 1995) ("The burden of proof lies on the employer to rebut the presumption."). To do so, TCCC must establish that: "(A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305.

TCCC argues that the evidence in the record is sufficient to rebut the presumption of total disability due to pneumoconiosis. In part, TCCC relies on the ALJ's finding that both Morrison's December 14, 1998, and April 16, 2007, x-rays were negative for the existence of pneumoconiosis.[4] However, in *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976), this court stated:

> It is obvious that the negative X-rays may not be [relied] upon [to] rebut the presumption of Section 921(c)(4). If he had been able to produce a positive X-ray, there would have been no need to invoke the presumption. The very existence of a negative X-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative X-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b).

*Id*. at 309-10; *see also Morris v. Matthews*, 557 F.2d 563, 565-66 (6th Cir. 1977). Accordingly, negative x-ray evidence alone does not rebut the § 921(c)(4) presumption.

---

[4]The ALJ also noted, however, that Dr. Enjeti's interpretation was "equivocal as to the existence of parenchymal abnormalities." Morever, in completing the x-ray reading form, Dr. Enjeti checked "no" in response to the question: "Is Film Completely Negative?"

TCCC also contends that the presumption is rebutted by the medical opinion evidence. Again, we disagree. Respondent emphasizes that the ALJ found that Drs. Enjeti and Soteres did not diagnose pneumoconiosis, and that Dr. Chandra's opinion, as it related to a possible diagnosis of pneumoconiosis, was properly discredited because it was poorly documented and poorly reasoned. Nevertheless, in this circuit, it is not enough to simply show that the medical evidence does not include a well documented opinion of pneumoconiosis.

"[R]ebuttal requires an affirmative showing . . . that the claimant does *not* suffer from pneumoconiosis, or that the disease is not related to coal mine work." *Hatfield v. Sec'y of Health and Human Servs*., 743 F.2d 1150, 1157 (6th Cir. 1984), *overruled on other grounds by Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135 (1987); *see also Caraway v. Califano*, 623 F.2d 7, 12 (6th Cir. 1980) ("Neither Dr. Rolston nor any other physician said that Caraway did not have pneumoconiosis. Therefore, neither Dr. Rolston's report nor the other evidence rebuts the presumption [of § 921(c)(4)]."); *Conn v. Harris*, 621 F.2d 228, 230 (6th Cir. 1980) ("As was true in *Ansel*, there is no medical testimony in the Record that Mr. Conn does not have pneumoconiosis. Accordingly, the Secretary must award benefits."). Because the record in this case does not contain an affirmative showing that Morrison does *not* suffer from pneumoconiosis, or that the disease is not related to coal mine work, the medical opinion evidence is insufficient to rebut the § 921(c)(4) presumption.[5]

Because the rebuttable presumption may affect the outcome of this claim, we remand to the ALJ for application of the presumption in consideration of the evidence. On remand, we direct the ALJ to permit the parties to submit additional evidence. *See Harlan Bell Co. v. Lemar*, 904 F.2d 1042, 1047-50 (6th Cir. 1990) (holding that parties should be allowed to present additional evidence after change in law). Any additional

---

[5]Significantly, it must also be noted that the ALJ did not find that the evidence affirmatively proved the absence of pneumoconiosis, which is what TCCC must prove to rebut the presumption. *See Blakely*, 54 F.3d at 1320. The ALJ found only that Morrison "failed to meet his burden to show the existence of pneumoconiosis . . . ."

evidence submitted must be consistent with the evidentiary limitations imposed by 20 C.F.R. § 725.414.

## IV.

Next, we review the ALJ's finding of total disability.  As noted above, the ALJ's factual determinations must be upheld if they are supported by substantial evidence in the administrative record, and the decision as a whole must be affirmed if the ALJ's decision was rational, supported by substantial evidence in the record, and consistent with controlling law.  *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998). "Where, however, an ALJ has improperly characterized the evidence or failed to [take] account of relevant record material, deference is inappropriate and remand is required." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003).  This is such a case.

Here, the ALJ's total disability finding is based solely on the post-bronchodilator results of Dr. Enjeti's 2007 pulmonary function study.  He failed to weigh the non-qualifying pre-bronchodilator results, the arterial blood gas study results, and Dr. Enjeti's opinion of no respiratory impairment. The ALJ's failure to consider all of the relevant evidence on the disability issue, and to explain his consideration of it, constitutes a clear violation of controlling law and regulations.  *See* 20 C.F.R. § 718.204(b) (qualifying pulmonary function tests sufficient to prove total disability only "[i]n the absence of contrary probative evidence"); 30 U.S.C. § 923(b) ("all relevant evidence" must be considered in adjudicating a black lung claim); *Eastover Mining*, 338 F.3d at 508.  Accordingly, on remand, the ALJ is directed to consider all of the evidence of record on the issue of total disability.

## V.

For these reasons, we vacate the order of the Benefits Review Board and remand to the Board for de novo consideration by the ALJ of petitioner's claim consistent with this opinion.