**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 16a0603n.06**

**No. 15-4255**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| APPLETON & RATLIFF COAL CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | **FILED**<br>Nov 15, 2016<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| DEWEY RATLIFF; DIRECTOR OF WORKERS' | ) | OF AN ORDER OF THE |
| COMPENSATION PROGRAMS, UNITED | ) | BENEFITS REVIEW BOARD |
| STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents. | ) | |

BEFORE: GRIFFIN, WHITE, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

An administrative law judge determined respondent Dewey Ratliff was eligible for black lung benefits and his former employer, petitioner Appleton & Ratliff Coal Corporation (A&R), was responsible for payment of those benefits. The Benefits Review Board affirmed. A&R raises several issues in its petition.[1] Finding none to be meritorious, we deny the petition.

---

[1]As set forth, both A&R and the insurance company from whom A&R purchased black lung insurance are insolvent. The Kentucky Insurance Guaranty Association appeared on behalf of A&R as a guarantor below. For ease, we refer to petitioner in this matter as A&R, even though the guaranty association is the real party in interest.

I.

A.

The Black Lung Benefits Act (Act or BLBA) provides benefits to miners who are totally disabled from their long-term exposure to coal dust resulting in legal pneumoconiosis (black lung disease). 30 U.S.C. § 901 *et seq.* For miners (like Ratliff) whose disability arises "at least in part" after December 31, 1969, Part C of the Act provides that mine operators are liable for benefit payments. § 932(b-c). If "there is no operator who is liable for the payment of such benefits," the Black Lung Disability Trust Fund assumes liability. § 932(c), (i)(4); 26 U.S.C. § 9501(d)(1)(B). The backstop that is the Trust Fund is one of last resort. The BLBA, for example, requires operators to purchase insurance to cover benefits under the Act as an attachment to a workers' compensation policy (as did A&R), or self-insure. 30 U.S.C. § 933(a); 20 C.F.R. §§ 726.1, 726.203(a). Moreover, "[t]o ensure that the fund does not bear the sole burden of black lung claims, the Department of Labor . . . established regulations to ensure that coal mine operators are liable 'to the maximum extent feasible' for awarded claims." *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (citation omitted).

B.

We begin with this "maximum extent feasible" framework, with an eye—given A&R's arguments—towards how the Department of Labor identifies responsible mine operators and how such operators may contest a "responsible operator" designation. Upon receipt of a claim for benefits, a district director of the Office of Workers' Compensation Programs (OWCP) develops evidence regarding the claim. *See generally*, 20 C.F.R. § 725.401 *et seq.* For one, the director reviews the miner's employment history, and identifies "one or more [mine] operators potentially liable for the payment of benefits." § 725.407(a), (b). A "potentially liable operator"

designation requires satisfaction of five criteria, only one of which is at issue here: "The operator is capable of assuming its liability for the payment of continuing benefits." § 725.494(a-e); *see also* § 725.494(e) (defining "capable of assuming its liability").

The district director then notifies each potential operator of the claim, who must respond within thirty days by "indicating its intent to accept or contest its identification as a potentially liable operator." §§ 725.407(b), 725.408(a)(1). If the operator contests this status, it has ninety days to submit documentary evidence supporting its position as to why any or all of the five criteria do not apply. § 725.408(b)(1). Failing to submit such evidence within this timeframe precludes an operator from so submitting in the future. § 725.408(b)(2); *Ark. Coals*, 739 F.3d at 318. If the operator—as here—fails to respond to the notice of claim, it is not permitted "to contest its liability for the payment of benefits" as to any of the five criteria, including whether it is "capable of assuming its liability." § 725.408(a)(3).

Upon evaluation of further medical evidence and responses by all potentially liable operators, the district director issues a "schedule for the submission of additional evidence." § 725.410(a). Among other things, this schedule contains the district director's designation of which among the potentially liable operators is the "responsible operator"—the operator responsible for paying benefits. §§ 725.495(a)(1); 725.410(a)(3). A "responsible operator" is "the potentially liable operator . . . that most recently employed the miner." § 725.495(a)(1). If that operator does not satisfy all of the five criteria, the district director designates the next most recent operator that does. § 725.495(3). If "there is no operator who is liable for the payment of such benefits," the Trust Fund assumes liability. 30 U.S.C. § 932(c), (i)(4); 26 U.S.C. § 9501(d)(1)(B).

A responsible operator must respond "with regard to its liability" within thirty days of the issuance of the schedule for the submission of additional evidence, "specifically indicat[ing] whether the operator agrees or disagrees with the district director's designation." 20 C.F.R. § 725.412(a)(1). This includes "submit[ting] evidence to demonstrate that it is not the potentially liable operator that most recently employed the claimant." § 725.414(b)(1).

The director may then either issue another schedule identifying a different potentially liable operator as the responsible operator, or issue a proposed decision and order constituting the OWCP's "final adjudication of a claim." §§ 725.415(b), 725.418(a). A "proposed decision and order must reflect the district director's final designation of the responsible operator liable for the payment of benefits . . . [and t]he district director must dismiss, as parties to the claim, any other potentially liable operators that received notification" of the claim. § 725.418(d). The parties may then appeal to an administrative law judge, and then to the Benefits Review Board. §§ 725.419(a), 725.481. The appeal to an ALJ is the point of no return on the responsible operator designation. If subsequent proceedings determine the director's designation is not supported, the matter is not remanded to find a different responsible operator and, instead, the Trust Fund pays benefits. *See generally*, *Kentland Elkhorn Coal Corp. v. Hall*, 287 F.3d 555, 566–68 (6th Cir. 2002).

Finally, the BLBA permits miners to seek modification of an order denying benefits "on the ground of a change in conditions or because of a mistake in a determination of fact" within one year. *Ark. Coals*, 739 F.3d at 317; *see also* 30 U.S.C. § 932(2) (incorporating 33 U.S.C. § 922); 20 C.F.R. § 725.310(a).

C.

Dewey Ratliff began working in coal mines at the age of sixteen. He mined for over twenty years, performing various coal-mining jobs until 1995. A&R, his last employer of more than one year, ceased business operations in January 1998. Ratliff filed a claim for benefits on September 17, 2001. A few weeks later, on October 3, 2001, A&R's insurance carrier, Reliance Insurance Company, was liquidated.

The OWCP identified A&R as a "potentially liable operator" by way of a December 10, 2001, notice of claim. A&R did not respond. The OWCP then issued a schedule for the submission of additional evidence on August 6, 2002, finding: (1) A&R was the responsible operator liable for the payment of benefits, and (2) Ratliff would not be entitled to benefits if a decision were issued at this time based upon the medical evidence in the record. As to the former, the OWCP reasoned that while A&R received notice of the claim, it "failed to timely respond" and therefore was not permitted "to contest its liability for the payment of benefits."

The Kentucky Insurance Guarantee Association appeared on behalf of A&R pursuant to the Kentucky Insurance Guaranty Association Act (KIGAA) on September 3, 2002. That act "provide[s] a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and . . . to minimize financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide a means of funding the cost of such protection among insurers." Ky. Rev. Stat. § 304.36-020. It creates the Kentucky Insurance Guarantee Association (KIGA), a nonprofit unincorporated legal entity, of which "insurance carriers of most types of insurance, licensed to operate in Kentucky, [are required] to be members." *Ky. Ins. Guar. Ass'n v. Jeffers*, 13 S.W.3d 606, 608 (Ky. 2000). In essence, KIGA steps into the

shoes of an insolvent insurance company and is required to pay certain claims under the act. Ky. Rev. Stat. § 304.36-080(1)(a), (c). There are limited exceptions to KIGA's indemnity requirements, which we discuss in further detail below.

Upon appearing, A&R disagreed with the OWCP's preliminary finding that A&R was the responsible operator by disputing one of the other five criteria—contending that A&R "was not the operator with whom [Ratliff] had the most recent period of cumulative employment of one year." Critically, however, it agreed that A&R or "its insurer is financially capable of assuming liability for the payment of benefits."

The OWCP subsequently issued a proposed decision and order on May 6, 2003. It again concluded A&R was the responsible operator, but this time found that Ratliff was entitled to benefits. A&R sought review before an administrative law judge, repeating its position that A&R "was not the operator with whom [Ratliff] had the most recent period of cumulative employment of one year." It again did not make issue of whether it or its insurer was financially capable of assuming liability for payment of benefits.

Ratliff's claim languished for reasons not pertinent to this appeal for several years awaiting a hearing before an administrative law judge. Importantly, during this delay, A&R first raised an issue as to its capacity to pay benefits. On May 9, 2007, A&R moved to remand the matter back to the OWCP, contending that as a matter of Kentucky state law, KIGA "does not have liability for benefits rendered pursuant to the Federal Black Lung Act" and, therefore, the Trust Fund is responsible for paying benefits to Ratliff. A&R contended that KIGA is exempt under Kentucky law from such liability because black lung benefits are purportedly guaranteed by the Black Lung Disability Trust Fund. An administrative law judge denied this motion, and A&R's motion for reconsideration.

A different administrative law judge issued a decision and order denying benefits in 2009. The ALJ found Ratliff ineligible for benefits because while Ratliff established that he suffered from "simple pneumoconiosis," he failed to establish that he suffered from "legal pneumoconiosis" and therefore was not "totally disabled" under the Act. On the responsible operator issue, the ALJ rejected A&R's contention that KIGA was not liable for paying black lung benefits as follows:

> Employer's counsel did not submit any evidence that the Appelton [sic] & Ratliff Coal Corporation is insolvent, defunct, absorbed into a successor corporation, or lacks tangible assets that could be used to satisfy its liability to satisfy the award of benefits under the Act. This Administrative Law Judge finds that the Employer has failed to rebut the presumption that it is capable of assuming liability for payment of continuing benefits awarded under the Act and is the properly designated responsible operator in this case.

Ratliff sought modification. Relying upon additional medical evidence, an administrative law judge awarded Ratliff benefits and concluded A&R was responsible for payments due. The Benefits Review Board affirmed. Petitioner timely appeals, and we have jurisdiction to review the petition under 33 U.S.C. § 921(c).

## II.

## A.

We turn first to A&R's primary issue on appeal—that KIGA is not responsible for paying Ratliff's benefits because the plain language of the KIGAA precludes such a finding. For our purposes, that act requires KIGA to pay "covered claims existing prior to the order of [the insurance company's] liquidation." Ky. Rev. Stat. § 304.36-080(1)(a), (c). Covered claims are "all kinds of direct insurance," including "[t]he full amount of a covered claim for benefits arising from a workers' compensation insurance policy." Ky. Rev. Stat. §§ 304.36-030(1), 304.36-080(1)(a)(1), 304.36-120(2). There are two exceptions pertinent here: "[o]cean marine

insurance" and "[a]ny insurance provided, written, reinsured, or guaranteed by any government or governmental agencies." § 304.36-030(1)(f), (h). A&R contends black lung benefits fall within these two exceptions, and thus it is not financially capable of assuming liability.[2]

### B.

"We review the factual record to decide whether substantial evidence supports the ALJ's decision that [the mine operator] is the responsible operator . . . [and] review issues of law de novo." *Kentland*, 287 F.3d at 563. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011) (citations omitted). "Where the substantial evidence requirement is satisfied, we may not set aside the ALJ's findings, even if we would have taken a different view of the evidence were we the trier of facts." *Id.* (citation omitted). In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence. *Id.* "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *Id.* (citation omitted).

### C.

As the director persuasively argues, A&R is precluded from contesting its liability for the payment of benefits. Under the Department of Labor's regulations, no operator may submit

---

[2]This is a novel contention, and we are not aware of any other court addressing this statutory construction question under KIGAA, or any other similarly enacted insurance guaranty act across the country. We are aware, however, of at least one instance where a state guaranty association assumed responsibility for paying black lung benefits on behalf of an insolvent insurer. *See, e.g.*, *Boyd & Stevenson Coal Co. v. Dir., Office of Workers' Comp. Programs*, 407 F.3d 663, 665 (4th Cir. 2005). And we note that the Benefits Review Board in *Jimmy Bowling v. Island Fork Construction* followed its decision in this matter and rejected A&R's position. BRB No. 16-0057 BLA (DOL Ben. Rev. Bd. Sept. 21, 2016).

evidence regarding the operator's capability of assuming liability for the payment of benefits unless it does so within ninety days of receiving notice that it is a "potentially liable operator." 20 C.F.R. § 725.408(a)(3), (b)(1-2); *Ark. Coals*, 739 F.3d at 318 ("[The regulations are] narrowly and clearly focused on when and how an operator may contest its identification to a director.") (emphasis omitted). Here, A&R received such notice and did not respond. Critically, by this juncture, both A&R and Reliance were insolvent. A&R's failure to respond means A&R lost its ability to contest its liability in future proceedings. § 725.408(a)(3) ("An operator which receives notification . . . and which fails to file a response within the [ninety-day] time limit . . . , shall not be allowed to contest its liability for the payment of benefits on [the] ground [that it is not capable of assuming liability for the payment of benefits].").

It is true that KIGA did not receive A&R's notice of claim and respond within the regulatory window. But yet when it did and appeared in this case—again, *after* A&R and Reliance were insolvent—it expressly *agreed* that A&R or its insurer was financially capable of assuming liability for the payment of benefits. It maintained this position for nearly five years, through the OWCP's proposed decision and order and its subsequent appeal. By failing to contest its responsible operator status until after the case went before an administrative law judge, KIGA has prevented the director from revisiting this determination and effectively seeks to shift the responsibility for payment of benefits to the Trust Fund.

Because A&R failed to timely contest its liability under the Department of Labor's unchallenged regulations, it is precluded from doing so.[3]

---

[3]Neither the ALJ nor Benefits Review Board relied upon this ground when ruling against A&R, but we may affirm on a different ground. *See, e.g., Arch of Kentucky, Inc. v. Dir., Office of Workers' Comp. Programs*, 556 F.3d 472, 480 (6th Cir. 2009) ("We can, instead, affirm the ultimate ruling of the BRB . . . based on a ground other than the one actually relied upon by the board."); *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998) (similar).

III.

The BLBA grants the power to the Secretary of the Department of Labor to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits." 30 U.S.C. § 923(b) (incorporating 42 U.S.C. § 405(a)). As such, the Department of Labor's regulations restrict the amount of medical evidence a party may submit both during the initial development of evidence and during any subsequent modification proceedings. A&R contends 20 C.F.R. § 725.310(b)'s limitations for modification proceedings violate the Fifth Amendment's due process guarantee to a meaningful opportunity to present its case.

> During an initial proceeding, each party may submit as part of its affirmative case:
>
> no more than two chest X–ray interpretations, the results of no more than two pulmonary function tests, the results of no more than two arterial blood gas studies, no more than one report of an autopsy, no more than one report of each biopsy, and no more than two medical reports.

20 C.F.R. § 725.414(a)(2)(i), (3)(i). Each party may also submit the following evidence in rebuttal:

> no more than one physician's interpretation of each chest X–ray, pulmonary function test, arterial blood gas study, autopsy or biopsy submitted by the [other party, as well as] . . . one physician's assessment of each piece of such evidence.

§ 725.414(a)(2)(ii), 3(ii). And upon submission of such rebuttal evidence, a party may submit additional physician statements responding to the rebuttal evidence. *Id.*

> The regulations further restrict each parties' ability to enter *additional* evidence:
>
> each [party is] entitled to submit no more than one additional chest X–ray interpretation, one additional pulmonary function test, one additional arterial blood gas study, and one additional medical report in support of its affirmative case.

20 C.F.R. § 725.310(b). The rebuttal evidence and additional statements provisions also apply in modification proceedings. § 725.310(b). And as A&R admits, the regulations also permit an administrative law judge to admit evidence in excess of these restrictions for "good cause." C.F.R. § 725.456(b)(1); *J.A. v. Island Creek Coal Co.*, BRB No. 07-0482 BLA, 2008 WL 2897354, at *2 n.3 (DOL Ben. Rev. Bd. Feb. 28, 2008). Moreover, when evaluating a request for modification, the administrative law judge "has the authority, if not the duty, to rethink prior findings of fact and to reconsider all evidence for any mistake in fact or change in conditions." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 743 (6th Cir. 1997).

A&R contends the modification proceeding limitations are arbitrary. It notes the amount of evidence permitted during initial proceedings is greater, even though the ultimate question to be answered by the administrative law judge—does the miner's condition qualify for benefits under the BLBA—remains the same. As with its argument regarding the KIGAA, this contention is procedurally flawed.

During the modification proceeding, A&R submitted one additional chest x-ray reading—a March 16, 2010, "B" reading by Dr. Bruce Broudy. That reading found abnormalities consistent with simple pneumoconiosis. During the formal submission of evidence at the hearing, A&R substituted Dr. Broudy's reading with that of a reading of the same x-ray by Dr. Paul Wheeler. It likely did so because Dr. Wheeler's reading was negative for pneumoconiosis, simple or otherwise. There is no record evidence of A&R attempting to introduce additional x-rays in contravention to 20 C.F.R. § 725.310(b)'s limitation (or requesting that the ALJ permit such extra evidence upon a showing of good cause). Nor does A&R present on appeal what evidence the regulation's limitation precluded it from entering. These failures

preclude review of A&R's argument. *See, e.g., Hix v. Dir., Office of Workers' Comp. Programs*, 824 F.2d 526, 527 (6th Cir. 1987).[4]

IV.

A&R next argues the ALJ improperly declined to credit medical evidence regarding the March 16, 2010, x-ray. A miner establishes entitlement to black lung benefits by showing: "(1) he has pneumoconiosis, (2) his pneumoconiosis arose in whole or in part out of his coal mine employment, (3) he is totally disabled, and (4) the total disability is due to pneumoconiosis." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014). The Act and its implementing regulations provide an irrebuttable presumption of a total disability due to pneumoconiosis upon a showing of complicated pneumoconiosis on an x-ray. 30 U.S.C. § 921(c)(3); 20 C.F.R. § 718.304(a). Below, the ALJ applied this presumption based upon a reading of a March 16, 2010, x-ray by Dr. Navani finding complicated pneumoconiosis. A&R contends this was in error because two other physicians—Drs. Broudy and Wheeler—read the same x-ray and came to a different conclusion.

A.

*Dr. Broudy's Reading.* A&R contends the ALJ improperly excluded Dr. Broudy's reading of this x-ray—contained in his physician's opinion—in which he found only simple, not complicated, pneumoconiosis. It then argues that because the ALJ declined to consider this reading, she "indicated [her] understanding [that] the regulations precluded [her] from considering [Dr. Broudy's] report in any fashion during any part of [her] deliberations." A&R

---

[4]To be sure, there is an exception to the general rule that the failure to raise an argument below precludes appellate review "when raising the issue would have been futile." *Consol. Coal Co. v. McMahon*, 77 F.3d 898, 904 (6th Cir. 1996) (citation omitted). Given A&R's lack of argument below concerning what evidence it was precluded from entering, and the "good cause" exception to the evidentiary limitation, there is no futility argument to be had.

further argues the ALJ excluded Dr. Broudy's reading without considering 20 C.F.R. § 725.456(b)(1)'s "good cause" exception. We review an ALJ's decision to exclude evidence for an abuse of discretion. *NLRB v. Jackson Hosp. Corp.*, 557 F.3d 301, 305–06 (6th Cir. 2009).

There was no abuse of discretion here. A&R substituted Dr. Broudy's reading with that of Dr. Wheeler's. Because Dr. Broudy's reading was not submitted as evidence by A&R, the ALJ determined that his reading was not admissible. Under 20 C.F.R. § 725.414(a)(3)(i), "[a]ny chest x-ray interpretations . . . that appear in a medical report must . . . be admissible." Refusing to consider medical opinions resting upon inadmissible evidence does not constitute an abuse of discretion. *See, e.g., Cumberland River Coal v. Jent*, 506 F. App'x 470, 472 (6th Cir. 2012) (per curiam). Moreover, A&R's argument misstates the record—the ALJ *did* credit several parts of Dr. Broudy's opinion, but just did not credit those parts of Dr. Broudy's opinion associated with his complicated pneumoconiosis opinion. And as the Benefits Review Board aptly noted, A&R's "good cause" argument fails because A&R did not raise it before the ALJ.

B.

*Dr. Wheeler's Reading.* In reading the March 16, 2010, x-ray, Dr. Wheeler observed Ratliff's lungs showed signs of other diseases—granulomatous disease, histoplasmosis or tuberculosis—not pneumoconiosis, simple or complicated. The ALJ found Dr. Wheeler's observation was not credible. A&R argues this was in error, noting the record—as described by the ALJ—included references to Ratliff showing signs of granulomatous disease.

The ALJ gave Dr. Wheeler's reading little weight for two reasons. First, Dr. Wheeler had found other x-rays to also be negative for simple pneumoconiosis, despite readings to the contrary from all other physicians (and contrary to the initial ALJ's finding that these readings showed Ratliff at least suffered from simple pneumoconiosis). As the ALJ stated, "[n]ot only is

Dr. Wheeler the only dually qualified physician who did not find simple pneumoconiosis in this case, his opinion that the Claimant does not have pneumoconiosis is 'aberrant' from the overwhelming weight of the evidence." Second, the ALJ found Dr. Wheeler's comments suggesting other diseases instead of pneumoconiosis "undermine[d] the credibility of his x-ray interpretation." This is because Ratliff's treatment records did "not support Dr. Wheeler's theories on alternative causes." Put differently, Dr. Wheeler "fail[ed] to point to evidence in the record indicating that the miner suffers or suffered from any of the alternative diseases."

We have characterized challenges "relat[ing] to the weighing of conflicting medical evidence" as "exceedingly narrow." *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 842 (6th Cir. 2016) (citation omitted). "The determination as to whether a physician's report was sufficiently documented and reasoned is essentially a credibility matter. As such, it is for the factfinder to decide." *Greene v. King James Coal Min., Inc.*, 575 F.3d 628, 635 (6th Cir. 2009) (citation and bracket omitted). When an ALJ adequately explains the reasons for crediting certain evidence over others, substantial evidence supports this credibility determination. *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997). Stated differently, it is not for this court to "reweigh the evidence [and] substitute our judgment for that of the ALJ." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1073 (6th Cir. 2013) (citation omitted).

A&R's position on appeal asks this court to do just that. The ALJ properly concluded Dr. Wheeler's x-ray reading merited little weight. "When a physician's opinion lacks support and detail, the ALJ may disregard it." *Greene*, 575 F.3d at 635. Here, even if other physicians' records indicate the presence of granulomatous disease in older x-rays, there is no mention of these findings in Dr. Wheeler's review. It was reasonable for the ALJ to discredit Dr. Wheeler's

reading on this basis—we are concerned with the foundation of Dr. Wheeler's opinion, not A&R's attempt to revise it after the fact. *Cf. Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 287 (4th Cir. 2010) (ALJ properly rejected medical opinion "consist[ing] of speculative alternative diagnoses that were not based on evidence that [the miner] suffered from any of the diseases suggested"). And as noted by the Benefits Review Board, the additional evidence showing the presence of granulomatous disease does not exclude—as concluded by Dr. Wheeler—a pneumoconiosis diagnosis.[5]

V.

For these reasons, we deny the petition.

---

[5]A&R speculates that the ALJ surreptitiously relied upon the Department of Labor's Bulletin No. 14-09 to discredit Dr. Wheeler. But the ALJ set forth her reasons for finding Dr. Wheeler not credible, and her decision falls comfortably within the familiar administrative law requirement of "contain[ing] a statement of the basis of the order, findings of fact, conclusions of law, and an award, rejection or other appropriate paragraph containing the action of the administrative law judge, his or her signature and the date of issuance." 20 C.F.R. § 725.477(a).