RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ISLAND FORK CONSTRUCTION,

          *Petitioner,*

    *v.*

JIMMY BOWLING; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

          *Respondents.*

No. 16-4319

---

On Petition for Review of an Order of the Benefits Review Board.
Nos. 16-0057 BLA; 2011 BLA 5956.

Decided and Filed: September 29, 2017

Before: MOORE, STRANCH, and DONALD Circuit Judges.

---

**COUNSEL**

---

**ON BRIEF:** H. Brett Stonecipher, FOGLE KELLER PURDY, Lexington, Kentucky, for
Petitioner. Joseph E. Wolfe, M. Rachel Wolfe, WOLFE WILLIAMS & REYNOLDS, Norton,
Virginia, for Respondent Bowling. Gary K. Stearman, Jeffrey S. Goldberg, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for the Federal Respondent.

---

**OPINION**

---

      JANE B. STRANCH, Circuit Judge. Jimmy Bowling worked as a coal miner for close to
three decades. There is no dispute that he is eligible for benefits under the Black Lung Benefits
Act. The question is who should pay the benefits to this disabled miner given that the responsible
mine operator and the company that insured that operator are both insolvent. Two options

exist—the federal Trust Fund and the Kentucky Insurance Guaranty Association (KIGA). The administrative law judge (ALJ) and Benefits Review Board (Board) both concluded that KIGA should provide benefits. We **affirm** the determination of the Review Board.

## I.          BACKGROUND

### A. Factual History of Bowling's Employment

Bowling worked as a coal miner for over 29 years. He spent most of that time as a foreman and substantially all of his work was underground. Bowling's last job was working for Island Fork Construction in a Kentucky mine where he moved belt lines, took out steel track, and produced coal. The parties do not dispute the facts underlying Bowling's claims or his eligibility for benefits.

### B. Procedural History of Bowling's Claims for Benefits

In 2002, Bowling filed a claim for benefits under the Black Lung Benefits Act. An ALJ denied the claim in 2005, finding that Bowling was totally disabled, but that he had failed to establish that he had pneumoconiosis (black lung), or that pneumoconiosis caused his total disability. In 2010, Bowling filed the current claim for benefits. During the time intervening between these claims, a provision of the Affordable Care Act amended the Black Lung Benefits Act to reinstate a rebuttable presumption that claimants with respiratory disabilities and 15 years or more of underground coal-mining work experienced those disabilities as a result of pneumoconiosis. 30 U.S.C. § 921(c)(4). Bowling sought benefits pursuant to this presumption.

The District Director, a Department of Labor employee responsible for processing claims, 20 C.F.R. § 725.418(d), issued a Notice of Claim that proposed designating Island Fork as the responsible operator. Island Fork contested all issues, including its status as responsible operator and Bowling's eligibility for benefits. In April 2011, the District Director issued a Proposed Decision and Order that awarded Bowling benefits. Island Fork requested de novo review by an ALJ. *See* 20 C.F.R. §§ 725.419(a); 725.455(a).

At the hearing before the ALJ in December 2014, counsel informed the ALJ that both Island Fork and its insurer, Frontier Insurance, were insolvent. Frontier declared insolvency in

November 2012, after the Proposed Decision and Order had been issued.  The ALJ requested briefing on the issue of whether Island Fork could still be the responsible operator now that it and its insurer were insolvent.  Department of Labor regulations state that an operator is deemed financially capable of being the responsible operator if the operator "obtained a policy or contract of insurance . . . that covers the claim" unless "the insurance company has been declared insolvent and its obligations for the claim are not otherwise guaranteed."  20 C.F.R. § 725.494(e)(1).  At the initial stages, if the District Director determines that an operator is not financially capable, the Director can select another operator—such as a previous employer—to be the responsible operator.  20 C.F.R. § 725.495(a)(3).  But once the claim reaches the ALJ stage, there is no mechanism to designate a different responsible operator.

As a result of this timing, the question presented is which of the two options—the federal Trust Fund or KIGA—should pay the benefits to Bowling.  The Trust Fund was created by the Black Lung Benefits Act and provides benefits when there are no responsible operators available, including when an operator is deemed at the ALJ stage not to be financially capable of paying benefits.  65 Fed. Reg. 79,920, 79,990-91 (Dec. 20, 2000).  KIGA is a nonprofit body created by the Kentucky Insurance Guaranty Association Act (Guaranty Act) to provide benefits when a member insurance company is insolvent.  All providers of property and casualty insurance in Kentucky are required to be KIGA members and pay fees—assessed with insurance premiums—to the association.  Ky. Rev. Stat. § 304.36-080(1)(d).  KIGA covers "claims made against insureds whose carrier becomes insolvent."  *Ky. Ins. Guar. Ass'n v. Jeffers*, 13 S.W.3d 606, 608 (Ky. 2000).  KIGA also "assist[s] in the detection and prevention of insurer insolvencies."  Ky. Rev. Stat. § 304.36-020.  The Guaranty Act provides exceptions for "[o]cean marine insurance" and "[a]ny insurance provided, written, reinsured, or guaranteed by any government or governmental agencies."  Ky. Rev. Stat. § 304.36-030.  KIGA argues that these exceptions apply and the benefits should instead be provided by the Trust Fund.  Bowling and the Department of Labor argue that the exceptions are inapplicable and that KIGA must legally provide benefits as guarantor to the insurance policy.

After briefing, the ALJ decided that Island Fork was still the responsible operator because benefits could be paid by KIGA.  Island Fork "as insured by" KIGA, and represented by

common counsel, petitioned for review of the ALJ Decision and Order by the Board.  The Board affirmed the decision of the ALJ, deciding that the statutory exceptions did not apply and KIGA was the guarantor of the insurance contract between Island Fork and Frontier.

Island Fork timely appealed to this court.

## II.     DISCUSSION

### A.  Appellate Jurisdiction and Standard of Review

This court has jurisdiction over appeals from final orders of the Board under 30 U.S.C. § 932(a), which incorporates the judicial review procedures of the Longshore and Harbor Workers' Compensation Act found at 33 U.S.C. § 921(c).  The injury underlying the claim took place in mines in Kentucky, so the Sixth Circuit is the "circuit in which the injury occurred." 33 U.S.C. § 921(c).

We "review the Board's legal conclusions de novo" to assess whether "the Board has committed legal error or exceeded its scope of review." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013).  We also "review the ALJ's decision to determine whether the ALJ applied the applicable law correctly to reach a conclusion supported by substantial evidence." *Id*.

### B.  Personal Jurisdiction

There is no dispute that the court has jurisdiction over Bowling and Island Fork, but KIGA argues that it has never properly been made a party in this action.  It therefore claims there is a lack of personal jurisdiction over it.  KIGA asserts that the District Director and adjudicatory bodies had authority to name KIGA as a party under various Department of Labor regulations, but failed to do so. *See* 20 C.F.R. § 725.360(d) ("Any other individual may be made a party if that individual's rights with respect to benefits may be prejudiced by a decision to be made."); § 725.407(d) (allowing the District Director to notify an operator "which may be liable for the payment of benefits" and "take such further action on the claim as may be appropriate").  KIGA claims that because the District Director and ALJ did not designate KIGA as a party, the association did not have an opportunity to "develop and rebut evidence."

If KIGA had been present to raise status as a party before the District Director, the Director could have responded by determining whether KIGA was properly a party. KIGA, however, did not have a direct interest in the claim until Frontier became insolvent, which was after the District Director issued a Proposed Decision and Order and the claim file had been sent to the ALJ. At that time, KIGA filed a letter that stated: "all of [Frontier's] claims have been turned over to KIGA." KIGA also indicated that it "had received a notification letter advising of potential liability as a result of the insolvent carrier. In response, KIGA made an entry of appearance and defended the case while it investigated whether Claimant was eligible for assistance under the Kentucky guarantees law." At the hearing before the ALJ, counsel stated that she was making an appearance "on behalf of Island Fork Construction which was previously insured by Frontier Insurance Company which is now insolvent so my client in fact at this point is KIGA." Counsel for Island Fork and KIGA raised arguments on the merits at the ALJ and Board level,[1] and introduced medical evidence. She briefed both decision makers on whether Island Fork was properly considered a responsible party, but did not challenge KIGA's status. If KIGA had raised the issue, the ALJ or Board would have had authority to add KIGA as a party under 20 C.F.R. § 725.360 (authorizing "the appropriate adjudication officer" to name parties including "[a]ny other individual . . . if that individual's rights with respect to benefits may be prejudiced by a decision to be made") Because KIGA did not raise the issue of its status before the ALJ or the Board, and instead participated in the proceedings, the challenge to personal jurisdiction was forfeited.

### C. The Recent *Ratliff* Decision

Bowling argues that KIGA also forfeited any challenge to its liability, relying on our recent decision in a similar case, *Appleton & Ratliff Coal Corp. v. Ratliff*, 664 F. App'x 470 (6th Cir. 2016). In *Ratliff*, a miner sought benefits from an operator and insurer that were both insolvent by the time the claim reached the ALJ. *Id.* at 473. There, KIGA raised arguments based on exceptions in its enabling statute, the same arguments raised here—that KIGA was not

---

[1]The Office of Workers' Compensation Programs in the Department of Labor submitted a Supplemental Appendix, found at App. R. 22, containing documents that are not included in the Island Fork Appendix. Bowling also submitted a Supplemental Appendix found at App. R. 25.

responsible for paying Black Lung Benefits Act claims because those claims were "[o]cean marine insurance" or were "guaranteed by . . . governmental agencies." *Id*. at 474. The ALJ and Board both disagreed and found KIGA liable to pay benefits. *Id*. We affirmed but based the decision on different grounds:

> By failing to contest its responsible operator status until after the case went before an administrative law judge, KIGA has prevented the director from revisiting [the responsible operator] determination and effectively seeks to shift the responsibility for payment of benefits to the Trust Fund.
>
> Because A&R failed to timely contest its liability under the Department of Labor's unchallenged regulations, it is precluded from doing so.

*Id*. at 475-76. In a footnote, we expressed some skepticism about the merits of KIGA's state statutory argument: "This is a novel contention, and we are not aware of any other court addressing this statutory construction question under [the Guaranty Act], or any other similarly enacted insurance guaranty act across the country." *Id*. at 475 n.2. The footnote also referenced an example of a state guaranty association assuming responsibility for black lung benefits, *Boyd & Stevenson Coal Co. v. Dir., Office of Workers' Comp. Programs*, 407 F.3d 663, 665 (4th Cir. 2005), and mentioned the Board's decision in this case. 664 F. App'x at 475 n.2.

Bowling argues that a similar forfeiture determination should apply here. There is, however, a timing difference between *Ratliff* and this case. In *Ratliff*, the insurer filed for bankruptcy a few weeks after the claim was filed, which was before the District Director had identified a responsible operator. *Id.* at 473. Here, KIGA had no meaningful opportunity to challenge its status before the District Director—the stage at which another responsible operator could have been identified—because Frontier became insolvent after the Director issued a decision naming Island Fork as the responsible operator. When KIGA appeared before the ALJ, and later the Board, it raised the arguments based on the exceptions in KIGA's enabling statute. Although those arguments were forfeited in *Ratliff*, the timing difference in this case leads us to address the merits of the statutory argument made by KIGA.

### D. Responsibility to Pay Under Kentucky Law

The Guaranty Act that created KIGA excludes "[o]cean marine insurance" and "[a]ny insurance provided, written, or reinsured, or guaranteed by any government or governmental

agencies." Ky. Rev. Stat. § 304.36-030(1)(f),(h). As mentioned in the footnote in *Ratliff*, there does not appear to be any caselaw interpreting these provisions of the Kentucky statute.

### 1. Ocean Marine Insurance

KIGA argues that insurance for black lung benefits should be considered "[o]cean marine insurance" based on the broad definition for that term used in the Guaranty Act. "Ocean marine insurance" is defined as "any form of insurance . . . that insures against maritime perils or risks and other related perils or risks, that are usually insured against by traditional marine insurance such as hull and machinery, marine builders risk, and marine protection and indemnity." Ky. Rev. Stat. § 304.36-050(10). The term "ocean marine insurance" also includes coverage for: "(a) The Jones Act (46 U.S.C. sec. 688); (b) The Longshore and Harbor Workers' Compensation Act [] (33 U.S.C. secs. 901 et seq.); or (c) Any other similar federal statutory enactment, or any endorsement or policy affording protection and indemnity coverage." Ky. Rev. Stat. § 304.36-050(10)(a)-(c). KIGA seeks to rely on subsections (b) and (c).

KIGA claims that the Black Lung Benefits Act is "empowered and authorized" by the Longshore Act. The Black Lung Benefits Act, however, is not "authorized" by the Longshore Act, but instead merely incorporates some of its provisions, such as the judicial review provision cited above in Section II(A). The Black Lung Benefits Act explicitly does not incorporate the insurance provisions of the Longshore Act. 30 U.S.C. § 932(a) (excluding Longshore Act sections regarding insurance, liability, and penalties for failure to secure workers' compensation from the sections incorporated into the Black Lung Benefits Act).

KIGA also argues that the Black Lung Benefits Act is a "similar federal statutory enactment" under subsection (c). But there is no logic or precedent for reading a statute involving miner benefits as involving "[o]cean marine insurance" similar to that dealt with in the Jones Act and Longshore Act, both of which directly involve traditional maritime activities. The Black Lung Benefits Act, moreover, is not in keeping with the list of maritime laws made by the Kentucky legislature. We therefore agree with the Board that insurance coverage for the Black Lung Benefits Act is not "[o]cean marine insurance" as that term is used and defined in the Guaranty Act.

2. Policies Guaranteed by Government Agencies

The Guaranty Act also states an exception for insurance "guaranteed by . . . governmental agencies." Ky. Rev. Stat. § 304.36-030(1)(h). KIGA argues that the Trust Fund "functionally operates as a guarantor of benefits" because it serves as a backstop when no responsible operator is able to pay benefits. Kentucky law, however, requires a guaranty to be "in writing signed by the guarantor and contain[ing] provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates." Ky. Rev. Stat. § 371.065(1). The Trust Fund does not have contracts with insurance companies that provide coverage for the Black Lung Benefits Act, so the Trust Fund's coverage of benefits does not meet the technical requirements for a guaranty under Kentucky law.

There is evidence that the committee that created the model law on which the Guaranty Act was based intended for the provision to exclude flood and crop insurance that are covered by government guaranty programs. *See* Property and Casualty Insurance Guaranty Association Model Act, Nat'l Ass'n of Ins. Comm'rs PC 540-12 (2016), http://www.naic.org/store/free/MDL-540.pdf ("This would have the effect of excluding flood and crop hail insurance guaranteed by the federal government from covered claims."). These federal programs do involve formal arrangements between insurance companies and the government. *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002) (discussing flood insurance policies issued both directly from the federal government and through an insurance company acting as a fiscal agent of the government); *Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1508 (10th Cir. 1993) (describing crop insurance issued directly by the government or through private insurance companies that are reimbursed for operating and administrative costs). The Black Lung Benefits Act instead seeks to require private mine operators to pay benefits "to the maximum extent feasible," *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (citation omitted), and only provides for the Trust Fund to assume liability when "there is no operator who is liable for the payment of such benefits," 26 U.S.C. § 9501(d)(1)(B).

The Trust Fund has not "guaranteed" the Black Lung Benefits Act coverage under Kentucky law. The KIGA exception for claims "guaranteed by . . . governmental agencies" therefore does not apply.

### III. CONCLUSION

We have personal jurisdiction over KIGA and address the merits of its claims. The exclusions in the Guaranty Act do not apply because the Black Lung Benefits Act coverage in this case is not "ocean marine insurance" or "guaranteed by . . . governmental agencies." KIGA is therefore liable for coverage issued by Frontier, the now-insolvent insurer. For the reasons stated, we **affirm** the decision of the Board.