RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NAVISTAR, INC.,

                            *Petitioner,*

     *v.*

TERRY FORESTER; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; BENEFITS REVIEW
BOARD; UNITED STATES DEPARTMENT OF LABOR,

                            *Respondents.*

No. 13-3994

---

On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor.
No. 12-0442 BLA.

Argued: August 6, 2014

Decided and Filed: September 12, 2014

Before: COOK and GRIFFIN, Circuit Judges; RICE, District Judge.[*]

---

## COUNSEL

**ARGUED:** H. Kent Hendrickson, RICE & HENDRICKSON, Harlan, Kentucky, for Petitioner. Jeffrey S. Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Stephen A. Sanders, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Respondent Forester. **ON BRIEF:** H. Kent Hendrickson, RICE & HENDRICKSON, Harlan, Kentucky, for Petitioner. Sean G. Bajkowski, Rita Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Stephen A. Sanders, Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Respondent Forester.

---

[*]The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

RICE, District Judge.  At issue in this case is whether work as a federal mine inspector is qualifying coal mine employment under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944, as amended by § 1556 of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010).  This is a matter of first impression in the Sixth Circuit.

Respondent-Claimant Terry Forester was awarded BLBA benefits after the Administrative Law Judge ("ALJ") determined that Forester's five years of private coal mine employment with Petitioner Navistar's predecessor, combined with his sixteen years of employment as a mine inspector with the United States Department of Labor's Mine Safety and Health Administration ("MSHA"), rendered him eligible for the rebuttable presumption that, having been employed for at least fifteen years in underground coal mines, and having a totally disabling respiratory or pulmonary impairment, he was totally disabled due to pneumoconiosis, commonly known as black lung disease.  *See* 30 U.S.C. § 921(c)(4).  Navistar appealed, but the Benefits Review Board ("BRB") upheld the award of benefits.  Navistar has now filed a Petition for Review of the BRB's decision.

For the reasons set forth below, we conclude that a federal mine inspector is not a "miner" for purposes of the BLBA.  We therefore VACATE the award of benefits, and REMAND the case to the Administrative Law Judge for an initial determination of whether Respondent-Claimant Terry Forester is entitled to an award of BLBA benefits without the benefit of the fifteen-year presumption.

**I.**

In order to recover BLBA benefits, a coal miner must prove by a preponderance of the evidence that: (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis.   20 C.F.R. §§ 718.201-718.204.   The BLBA establishes a rebuttable

presumption that a miner who was employed for at least fifteen years in underground coal mines and suffers from a "totally disabling respiratory or pulmonary impairment," is "totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). This presumption may be rebutted by a showing that "(A) such miner does not . . . have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." *Id.*

> For purposes of the BLBA, a "miner" is defined as:
>
> any individual who works or has worked in or around a coal mine or coal preparation facility in the *extraction or preparation* of coal. Such term also includes an individual who works or has worked in coal mine *construction or transportation* in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d) (emphasis added). A Department of Labor regulation slightly expands the definition of "miner" to include individuals involved in maintenance of a coal mine. It defines a "miner" as:

> any person who works or has worked in or around a coal mine or coal preparation facility in the *extraction, preparation, or transportation* of coal, and any person who works or has worked in coal mine *construction or maintenance* in or around a coal mine or coal preparation facility. There shall be a rebuttable presumption that any person working in or around a coal mine or coal preparation facility is a miner. This presumption may be rebutted by proof that:
>
> (1) The person was not engaged in the extraction, preparation or transportation of coal while working at the mine site, or in maintenance or construction of the mine site; or
> (2) The individual was not regularly employed in or around a coal mine or coal preparation facility.

20 C.F.R. § 725.202(a) (emphasis added).

We have held that BLBA claimants must satisfy a two-part eligibility test. "To qualify as a 'miner,' an individual must establish that: (1) he worked in or around a statutorily defined coal mine (the 'situs' test), . . . and (2) his duties involved the extraction or preparation of coal, or involved appropriate coal mine construction or transportation (the 'function' test)." *Falcon Coal Co. v. Clemons*, 873 F.2d 916, 921 (6th Cir. 1989). Although the "function" test also encompasses "workers performing duties incidental to the extraction or preparation of coal,"

those duties must be "an 'integral' or 'necessary' part of the coal mining process.'" *Id.* at 922. "In general, those individuals who handle raw coal or who perform tasks necessary to keep the mine operational and in repair are generally classified as 'miners.'" *Id.* at 922-23.

## II.

From 1970 until 1975, Respondent-Claimant Terry Forester was employed by Wisconsin Steel, a predecessor to Petitioner Navistar, as a dust sampler, safety inspector, and section foreman in the underground coal mines in Kentucky. From 1975 until 1991, Forester worked as a federal coal mine inspector in Kentucky, with MSHA. He was in the underground coal mines each day, checking for compliance with federal mine safety regulations. Throughout his twenty-one-year career in the coal mine industry, he was regularly exposed to coal dust. He stopped working in 1991 due to a knee injury. In 1992, he was declared totally disabled due to breathing problems, and began receiving monthly benefits under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193. In 2008, Forester filed a claim for BLBA benefits. Forester's continued receipt of FECA benefits does not prevent him from also receiving BLBA benefits. However, any BLBA award would be reduced by the amount of the FECA award. *See* 30 U.S.C. § 932(g).

The claims examiner for the Office of Workers' Compensation Programs ("OWCP"), Department of Labor, recommended that Forester's BLBA claim be denied based on a finding that the evidence failed to show that Forester was totally disabled due to pneumoconiosis. Forester then requested a formal hearing, which was held on April 6, 2011, before an ALJ.

At that hearing, Navistar stipulated that Forester had seventeen years of coal mine employment.[1] Nevertheless, it later submitted a post-hearing brief, arguing that the stipulation was ineffective because it was contrary to law. Navistar conceded that Forester had five years of qualifying coal mine employment, from 1970–1975. It argued, however, that because Forester's work as a federal mine inspector did not qualify as coal mine employment under the BLBA, he

---

[1]The factual basis for the seventeen-year stipulation is not entirely clear. Forester worked five years for Navistar, plus sixteen years for MSHA, for a total of twenty-one years. This apparent inconsistency is irrelevant since Forester would be entitled to the fifteen-year presumption only if his employment with MSHA is included, regardless of how long he actually worked there.

was not entitled to the fifteen-year presumption. At the ALJ's request, Forester and the Director, OWCP (the "Director"), each filed position statements addressing this issue.

The Director took the position that Forester's work as a federal coal mine inspector did not meet the statutory definition of "miner" under the BLBA, relying upon two Fourth Circuit Court of Appeals cases, *McGraw v. Director, Office of Workers' Compensation Benefits*, 908 F.2d 967 (4th Cir. 1990) (per curiam) (table), and *Kopp v. Director, Office of Workers' Compensation Programs*, 877 F.2d 307 (4th Cir. 1989). *Kopp*, in turn, cited to *Eastern Associated Coal Corp. v. Director, O.W.C.P.*, 791 F.2d 1129 (4th Cir. 1986). In *McGraw*, the Fourth Circuit found that federal mine inspectors do not meet the statutory definition of "miner" for the purpose of determining eligibility for black lung benefits.

Forester, on the other hand, argued that his work as a federal mine inspector was qualifying coal mine employment. He relied on the BRB's decision in *Moore v. Duquesne Light Company*, 4 Black Lung Rep. 1-40.2 (1981), *aff'd*, 681 F.2d 805 (3d Cir. 1982) (table), and its progeny. In *Moore*, the BRB held that federal mine inspectors are "miners" for purposes of the BLBA. According to the BRB, a federal mine inspector's work satisfies the "situs" test, since the inspector spends a significant portion of each work day in underground coal mines, and satisfies the "function" test, because the inspector's duties are an integral function of the operation of the coal mines. Safety inspections are statutorily required, and mines cannot operate unless health and safety standards are met. *Moore*, 4 Black Lung Rep., at 1-44. *See also Lynch v. Dir., OWCP*, 6 Black Lung Rep. 1-1088, 1-1090 (1984) (per curiam) ("claimant's work as a federal coal mine inspector was coal mine employment"); *Mounts v. Dir., OWCP*, 8 Black Lung Rep. 1-425, 1-426 (1985) (per curiam) (refusing to overrule *Moore*); *Bartley v. Dir., OWCP*, 12 Black Lung Rep. 1-89, 1-91 (1988) (following *Moore*); *K.C. v. Navistar*, BRB No. 07-0136 BLA, 2007 WL 7629805, at *4 (Oct. 30, 2007) (unpublished) (noting that the BRB has previously held "that the work of a federal mine inspector constitutes coal mine employment under the terms of the [BLBA], because it meets the situs and function requirements").

The ALJ adopted the BRB's position, found that Forester was entitled to the benefit of the fifteen-year presumption, and awarded BLBA benefits. The ALJ found the Fourth Circuit authority cited by the Director to be "very weak." Neither *Kopp* nor *Eastern Associated Coal*

*Corp.* actually reached the question of whether a federal mine inspector qualifies as a "miner" under the BLBA. *McGraw*, an unpublished opinion, appeared to touch on the question, but cited only to *Kopp* as relevant authority. The ALJ further noted that these cases were not binding in the Sixth Circuit.

The ALJ determined that, because the Sixth Circuit had not yet addressed this issue, the holdings of the BRB controlled, most notably *Moore* and its progeny. In accordance with *Moore*, he concluded that, because Forester's work as a federal mine inspector satisfied both the "situs" test and the "function" test, it was qualifying coal mine employment for purposes of the BLBA. Based on Navistar's stipulation that Forester had seventeen years of coal mine employment, he concluded that Forester was entitled to the rebuttable presumption that he is totally disabled due to pneumoconiosis, and that Navistar had failed to rebut that presumption. Forester was awarded BLBA benefits retroactively payable to May of 2008, when the claim was filed. Because the federal government is immune from liability under the BLBA, *see* 20 C.F.R. § 725.491(f), liability falls on Navistar as Forester's most recent private employer. *See Moore*, 4 Black Lung Reporter, at 1-48.

Navistar petitioned the BRB for review of the ALJ's decision, challenging the holding that Forester's work as a federal coal mine inspector constitutes qualifying coal mine employment under the BLBA. On appeal, the BRB affirmed the award of BLBA benefits. It found that the ALJ did not abuse his discretion in relying on *Moore*, or in holding that Navistar's stipulation of seventeen years of coal mine employment was binding.

Pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a), Navistar has filed a Petition for Review of the BRB's decision. Navistar urges the court to vacate the award of BLBA benefits. The Director recommends that the court vacate the award and remand for consideration of whether Forester is entitled to BLBA benefits without the benefit of the fifteen-year presumption.

## III.

The threshold issue on appeal is whether Navistar's stipulation that Forester had seventeen years of coal mine employment is legally binding, foreclosing any need for us to

consider the legal question of whether work as a federal mine inspector is qualifying coal mine employment for purposes of determining eligibility for BLBA benefits. As previously noted, Navistar stipulated, at the hearing before the ALJ, that Forester had seventeen years of coal mine employment. However, in its post-hearing brief, Navistar argued that it was not bound by this stipulation with respect to the legal question of whether Forester's work as a federal mine inspector was qualifying coal mine employment, since a stipulation that is contrary to law is not binding. Because the ALJ found that federal mine inspectors are "miners" for purposes of the BLBA, he concluded that the stipulation was not contrary to law and was, therefore, binding.

Navistar argues that Forester waived any claim as to the binding nature of the stipulation, having abandoned the argument in his brief to the BRB. Nevertheless, the BRB addressed the issue, concluding that the ALJ did not abuse his discretion in holding that the stipulation was not contrary to law and was binding.

Regardless of whether this issue was adequately preserved for appeal, we find that Navistar's *factual* stipulation—that Forester had seventeen years of coal mine employment— is not binding with respect to the purely *legal* question of whether his employment as a federal mine inspector qualifies as coal mine employment for purposes of the BLBA. As the Supreme Court held in *Swift and Co. v. Hocking Valley Railway Co.*, 243 U.S. 281 (1917), "[i]f the stipulation is to be treated as an agreement concerning the *legal effect* of admitted facts, it is obviously inoperative[,] since the court cannot be controlled by agreement of counsel on a subsidiary question of law." *Id.* at 289-90 (emphasis added). Neither the ALJ nor the BRB treated the factual stipulation as conclusive with respect to the underlying legal issue, and neither do we.

## IV.

We review the BRB's legal conclusions *de novo*. *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009). The BRB concluded that a federal mine inspector is a "miner" for purposes of determining eligibility for BLBA benefits. It therefore upheld the ALJ's decision to credit Forester's employment as a federal mine inspector toward the rebuttable presumption that, having worked for at least fifteen years in underground coal mines, and having

a totally disabling respiratory or pulmonary impairment, he is totally disabled due to pneumoconiosis. *See* 30 U.S.C. § 921(c)(4).

It is undisputed that Forester's work as a federal mine inspector satisfies the "situs" test. As an inspector, Forester spent much of his workday underground in the coal mines. Navistar and the Director argue, however, that Forester's work as a federal mine inspector fails to satisfy the "function" test, because inspectors are not involved in the extraction, preparation, or transportation of coal, nor are they involved in coal mine construction or maintenance. Rather, they perform a purely regulatory function. Forester, on the other hand, maintains that the BRB correctly found that federal mine inspectors do satisfy the "function" test because they perform an essential part of the mining process.

**A.**

Before addressing the question of whether a federal mine inspector's work satisfies the "function" test, we must determine how much deference, if any, is owed to the positions taken by the respective parties. Because the BRB "acts as an adjudicatory tribunal and does not make rules or formulate policy, its interpretation [of the BLBA] is not entitled to any special deference." *Robbins v. Cyprus Cumberland Coal Co.*, 146 F.3d 425, 427 (6th Cir. 1998) (quoting *Sharondale Corp. v. Ross*, 42 F.3d 993, 997 (6th Cir. 1994)).

In contrast, because the Department of Labor does make rules and formulate policy concerning black lung benefits, the Director's interpretation of the BLBA is entitled to some deference. The degree of deference to be given depends on whether that interpretation is contained in a regulation issued following notice and comment rulemaking. *Chao v. Occupational Safety & Health Review Comm'n*, 540 F.3d 519, 523 (6th Cir. 2008). If the agency's interpretation is contained in a regulation or other form intended to have the force of law, it is entitled to substantial deference under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). In this case, there is no federal regulation that directly speaks to the question of whether a federal mine inspector is a "miner" for purposes of the BLBA. Therefore, *Chevron* deference is inapplicable.

Where, as here, the agency's interpretation of the statute is contained in a more informal medium not intended to have the force of law, such as a litigation position taken in a brief, it is afforded a lesser level of deference known as *Skidmore* deference. *See Chao*, 540 F.3d at 523 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)). *See also North Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 691 F.3d 735, 743 (6th Cir. 2012) ("[B]ecause the Secretary's interpretation has been offered in litigation, it is afforded no more than *Skidmore* deference.").

Under *Skidmore*, the agency's interpretation of the statute is given weight in proportion to its power to persuade. Factors to be considered include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164, 89 L. Ed. 124. In deciding whether the agency's interpretation is persuasive, the court must look to the statute's text and design, and determine whether the agency's interpretation is consistent with the congressional purpose. *S. Rehab. Grp., PLLC v. Sec'y of Health & Human Servs.*, 732 F.3d 670, 685 (6th Cir. 2013).

## B.

As a remedial statute, the BLBA "must be liberally construed to include the largest number of miners as benefit recipients." *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir. 1993), *abrogated on other grounds by Eastover Mining Co. v. Williams*, 338 F.3d 501 (6th Cir. 2003). Nevertheless, only those individuals who meet the statutory definition of "miner" are entitled to BLBA benefits. We agree with the Director that because federal mine inspectors do not satisfy the "function" test, they fall outside the scope of the statutory definition.

As previously noted, the BLBA defines a "miner" as:

> any individual who works or has worked in or around a coal mine or coal preparation facility in the *extraction or preparation* of coal. Such term also includes an individual who works or has worked in coal mine *construction or transportation* in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d) (emphasis added). A "miner" also includes a person who works in "maintenance in or around a coal mine or coal preparation facility." 20 C.F.R. § 725.202(a).

A federal coal mine inspector does not work "in the extraction or preparation of coal," or "in coal mine construction or transportation," as those terms are commonly defined. Nor is a federal mine inspector involved in "maintenance" tasks at the mine site. Rather, a federal mine inspector's duties are purely regulatory. Although the "function" test also encompasses "workers performing duties incidental to the extraction or preparation of coal," those "incidental duties must be an 'integral' or 'necessary' part of the coal mining process." *Falcon Coal*, 873 F.2d at 922.

In an unpublished decision, we previously held that a mine inspector, employed by the coal company itself, performed duties that were an integral or necessary part of the coal mining process. In *Sammons v. EAS Coal Co.*, No. 92-3030, 1992 WL 348976 (6th Cir. Nov. 24, 1992), we held that a private mine security guard, who was also responsible for checking the mine for fire and safety issues, was a covered miner under the BLBA. He kept the mine "operational, safe, and in repair," rendering his work "vital and essential to the production and extraction of coal." *Id.* at *2.

Likewise, the BRB has held that a private coal mine inspector, whose purpose was to ensure safety in order to maximize the coal production process, was engaged in a function that is necessarily related to the extraction or preparation of coal. *See Wackenhut Corp. v. Hansen*, 560 F. App'x 747, 749 (10th Cir. 2014).

Forester argues that, much like the private coal mine inspectors in *Sammons* and *Hansen*, federal mine inspectors engage in work that is integral and necessary to the mining process. These cases, however, are easily distinguishable. In addition to their inspection duties, Sammons and Hansen performed other tasks related to the maintenance and daily operation of the mines. Sammons not only checked the mine for safety violations, but he was also directly involved in maintenance of the mine, "repairing and replacing pipes and pumps." Accordingly, it is not surprising that the court found that his work was "vital and essential to the production and extraction of coal, as it keeps the mine operational, safe, and in repair." *Sammons*, 1992 WL 348976, at *2. Likewise, Hansen not only patrolled the mines checking for safety violations and

fires, but he also inspected equipment, checked and refilled fire extinguishers, and weighed the coal cars as they came and went. *Hansen*, 560 F. App'x at 750. These tasks not only ensured the safe operation of the mine, but they were also integral to the extraction of coal. *Id.*

In stark contrast to these private mine inspectors, a federal mine inspector serves a purely regulatory function. He is not involved in the day-to-day overall operation of any particular mine; rather, he inspects each mine several times each year, issuing citations if he finds violations of federal mine health and safety standards. Merely because the federal mine inspector is charged with ensuring compliance with those standards, the violation of which may delay or halt the mining process, these incidental regulatory duties are not an "integral or necessary part of the coal mining process." *Falcon Coal*, 873 F.2d at 922 (internal quotation marks omitted). They therefore fail to satisfy the "function" test.

As Navistar points out, Congress enacted the Federal Mine Safety and Health Amendments Act of 1977 with the goal of eliminating the inherent conflict of interest that existed when the Department of the Interior was charged with maximizing coal production *and* enforcing safety regulations. S. Rep. No. 95-181, at 5 (1977), *reprinted in* 1977 USCCAN 3401, 3405. By moving enforcement responsibilities from the Department of the Interior to the Department of Labor, Congress intended to separate inspection duties from any nexus to production.

For these reasons, we conclude that the Director's position, that federal mine inspectors are not "miners" for purposes of determining eligibility for BLBA benefits, is well-reasoned and consistent with the intent of Congress. Moreover, in litigation, the Director has consistently asserted this position for over twenty years. For example, in the brief submitted in *Tussey v. Island Creek Coal Co.*, No. 92-3032 (6th Cir. Mar. 18, 1992), the Director argued that "[a] federal mine inspector performs a purely governmental function . . . The inspector is not engaged in coal mining; he merely regulates it."[2] The Director asserted a similar position in the line of Fourth Circuit cases cited above. *See also* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920-01, 80007 (Dec. 20, 2000)

---

[2]Because this issue was not dispositive, the Sixth Circuit did not reach it. *Tussey*, 982 F.2d at 1042-43, *abrogated on other grounds by Eastover Mining Co.*, 338 F.3d at 509-11.

(noting that the Department of Labor has taken the position in litigation that federal mine inspectors should not be considered "miners" for purposes of the BLBA).[3]  Because we find the Director's position to be quite persuasive, we give it considerable deference.  *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164, 89 L. Ed. 124.

In holding that federal mine inspectors are not "miners" for purposes of the BLBA, we note that those federal mine inspectors suffering from totally disabling pneumoconiosis are not left without a remedy.  FECA provides the appropriate compensation, and is the exclusive remedy for on-the-job coal dust exposure.  *Kopp*, 877 F.2d at 309 n.1.  However, a federal mine inspector who has also worked in *qualifying* coal mine employment, at some other point in his career, may still be entitled to BLBA benefits if he can meet the statutory requirements.

In Forester's case, because his employment as a federal mine inspector cannot be counted as qualifying coal mine employment, he is not entitled to the benefit of the fifteen-year rebuttable presumption set forth in 30 U.S.C. § 921(c)(4).  Nevertheless, it is undisputed that Forester's previous employment with Navistar's predecessor is qualifying coal mine employment.  Even without the benefit of the fifteen-year presumption, he may be able to prove that: (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his five years of private coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis.  *See* 20 C.F.R. §§ 718.201-718.204.  The ALJ must make this determination.

## V.

For the reasons set forth above, we VACATE the award of BLBA benefits, and REMAND the case to the Administrative Law Judge for an initial determination of whether Respondent-Claimant Terry Forester is entitled to an award of BLBA benefits without the benefit of the fifteen-year presumption.

---

[3]In *Hansen v. Wackenhut Corp.*, BRB No. 09-0179 BLA, 2009 WL 4548862, at *1 (BRB Nov. 27, 2009), the Director took the position that a private mine inspector satisfied the "function test" and should be deemed a "miner" for purposes of the BLBA.  However, because *Hansen* did not involve a federal mine inspector, there is no inconsistency.