RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KEN LICK COAL COMPANY; AMERICAN RESOURCES
CORPORATION,

                          *Petitioners*,

    *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR; MARY
REED, widow of Bob Reed,

                          *Respondents*.

> No. 23-3738

─────────────────

On Petition for Review from the Benefits Review Board.
No. 22-0009 BLA.

Argued:  October 31, 2024

Decided and Filed:  February 21, 2025

Before:  SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Michael A. Pusateri, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners.  Michael P. Doyle, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  **ON BRIEF:**  Michael A. Pusateri, Mark E. Solomons, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners.  Michael P. Doyle, Ann Marie Scarpino, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

_____

**OPINION**

_____

MURPHY, Circuit Judge.  A regulation implementing the Black Lung Benefits Act allows coal miners to file a second claim for benefits after their first claim has been denied if they identify changed circumstances.  20 C.F.R. § 725.309(c).  When miners show such a change, the regulation generally allows the parties to relitigate all issues in the proceedings over the second claim.  *Id.* § 725.309(c)(5).  Yet it adds that a "stipulation" that a party "made" when litigating the first claim "will be binding" in those later proceedings.  *Id.*  That provision proved critical in this case.  An administrative law judge required Ken Lick Coal Company to pay a miner's benefits *solely* because of a stipulation the company allegedly made when litigating the miner's earlier claim.  But we hold that this purported "stipulation" addressed the law rather than the facts, so the judge had the power to disregard it.  And the judge made clear that he would not have required Ken Lick to pay the benefits but for the stipulation.  We thus grant Ken Lick's petition for review and transfer the liability on the miner's claim to the Black Lung Disability Trust Fund.

I

A

After years of inhaling coal dust in coal mines, miners can develop a lung condition medically known as pneumoconiosis and commonly known as black-lung disease.  *See Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 312–13 (6th Cir. 2014).  Congress passed the Black Lung Benefits Act "to provide benefits" to miners who become disabled from this disease and to their eligible survivors.  30 U.S.C. § 901(a).  It delegated "broad authority" to the Secretary of Labor to identify the miners who should receive benefits and the coal companies who should pay for them.  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 743 (6th Cir. 2019); *see* 30 U.S.C. § 932(c).

The Secretary's regulations identify eligible miners using a four-part test.  Eligible miners must have pneumoconiosis.  *See* 20 C.F.R. § 725.202(d)(2)(i).  Their pneumoconiosis

must have arisen at least in part from coal-mine work (rather than from other activities like smoking).  *See id.* §§ 725.202(d)(2)(ii); 718.203(a).  The miners must qualify as "totally disabled." *See id.* § 725.202(d)(2)(iii).  And their disease must have "contribute[d] to" this total disability.  *Id.* § 725.202(d)(2)(iv).

The regulations likewise identify the coal companies (if any) that should pay the benefits. *See id.* §§ 725.490–.497.  For a coal company to qualify as a "potentially liable operator," several "conditions" must exist.  *Id.* § 725.494.  Among other things, the company must have operated a coal "mine or other facility" that contributed in part to the miner's disability or death; the company must have "employed" the miner "for a cumulative period of not less than one year"; and it must have the ability to pay the benefits.  *Id.* § 725.494(a), (c), (e).  Ultimately, however, only one "responsible operator" must pay: the potentially liable operator "that most recently employed the miner." *Id.* § 725.495(a)(1).  And Congress established the "Black Lung Disability Trust Fund" to pay these benefits if no liable operator exists.  *Id.* § 725.495(a)(4); 26 U.S.C. § 9501(d)(1)(B).

The regulations also fill in the details of the claims process.  *See Bryan*, 937 F.3d at 743–44.  Once a miner files a claim, a "district director" in the Department of Labor investigates it and issues a proposed benefits decision.  *See* 20 C.F.R. §§ 725.401, -.418.  As part of the investigation, the district director examines whether any of the miner's prior employers must pay the benefits.  *See id.* § 725.407(a).  The director must notify all "potentially liable" operators and allow them to object.  *See id.* §§ 725.407(b), -.408, -.410.  The proposed decision must then designate one responsible operator and dismiss all the others.  *See id.* § 725.418(d); *see also id.* § 725.410(a)(3).  From this point on, the dismissed operators generally cannot face liability.  *See id.* § 725.407(d); *Island Fork Constr. v. Bowling*, 872 F.3d 754, 756 (6th Cir. 2017).

Once the district director issues a decision, a losing party may request a hearing before an administrative law judge.  *See* 20 C.F.R. § 725.419(a).  If the judge finds that another company (not the designated company) qualifies as the "responsible operator," the Trust Fund will pay the miner's benefits.  *See* 26 U.S.C. § 9501(d)(1)(B); *Bowling*, 872 F.3d at 756.  And nobody will pay those benefits if the judge finds that the miner does not meet the four-part eligibility test.

After the parties complete their proceedings before an administrative law judge, the losing party has two more routes to additional review. The party may appeal the judge's decision to the Benefits Review Board. *See* 20 C.F.R. § 725.481. And the party may then seek judicial review of the Board's decision in a circuit court. *See id.* § 725.482(a); *see also* 33 U.S.C. § 921(b)–(c).

Even if miners lose their first claim for benefits, they may seek benefits down the road because pneumoconiosis can take years to manifest. *See Buck Creek Coal Co. v. Sexton*, 706 F.3d 756, 758 (6th Cir. 2013). Miners may file such a "subsequent claim" one year after the final denial of a prior claim. 20 C.F.R. § 725.309(c). Yet they must overcome an additional obstacle to obtain benefits at this point: the facts underlying one of the "conditions of entitlement" on which they lost their prior claim must have "changed" since the prior denial. *Id.* § 725.309(c), (c)(3). So, for example, claimants who were previously denied relief because they did not meet the regulatory definition of "miner" must show that they "worked as a miner following the prior denial." *Id.* § 725.309(c)(3). If they make this showing, though, the "findings made in connection with the prior claim" generally will not bind the parties during the litigation of the subsequent claim. *Id.* § 725.309(c)(5). That said, "any stipulation made by any party in connection with the prior claim will be binding on that party in the adjudication of the subsequent claim." *Id.*

B

Bob Reed took his first coal-mine job in 1973. From then until 1986, he worked at strip mines for Ken Lick Coal Company. Reed performed several different roles during these years. His tasks—such as loading coal using bulldozers and cleaning coal using sweepers—regularly exposed him to coal dust. Reed quit his job with Ken Lick after suffering a heart attack.

In 1988, he renewed his coal-mine work with Green Valley Hydro Seeding & Reclamation. He later transitioned to a third company—JPR—and worked for this employer until 1991. While working for these last two employers, Reed operated similar equipment as he had before to help reclaim stripped mines. This reclamation work also regularly exposed him to coal dust.

When combined with his smoking habit, Reed's employment led him to develop breathing problems. Those problems eventually made it difficult for Reed to sleep through the night. He also could not "walk very far without" losing his breath or do "physical" tasks like lifting, pushing, or pulling. Supp. Pet. App'x 22. By about 2013, Reed used an oxygen tank to help him breathe.

Over the years, Reed filed three claims for black-lung benefits. He filed his first claim around the end of his employment with Ken Lick in 1986. A district director denied this claim because Reed failed to establish his eligibility. Reed did not appeal.

Reed filed a second claim in 2007. A district director found him eligible and designated Ken Lick as the responsible operator. Ken Lick requested a hearing before an administrative law judge. At the hearing, the company did not contest the responsible-operator designation. It instead focused on whether Reed had proven the four elements necessary to make him eligible for benefits. The judge denied benefits, reasoning that Reed had failed to show that he suffered from pneumoconiosis (in contrast to a smoking-related impairment).

The Benefits Review Board vacated this decision due to a change in law. While the appeal was pending, the Affordable Care Act of 2010 reinstated a presumption that miners are "totally disabled due to pneumoconiosis" if they suffer from a "totally disabling respiratory or pulmonary impairment" and performed "fifteen years or more" of coal-mine work. 30 U.S.C. § 921(c)(4). The Board remanded for the administrative law judge to decide whether Reed qualified for this presumption (what we will call the "15-year presumption").

On remand, the administrative law judge denied benefits again. The judge recognized that Reed had worked in qualifying coal-mine employment for 13 years at Ken Lick. But the judge held that Reed's later reclamation work for Green Valley and JPR did not qualify as coal-mine work. So his work history did not extend long enough to trigger the 15-year presumption. The Board upheld this second decision.

Reed filed his third claim (the one at issue here) in 2018. He tragically passed away while it remained pending. His wife took over this claim and sought survivor's benefits. A

district director again awarded benefits and designated Ken Lick as the responsible operator. Ken Lick again appealed to an administrative law judge.

This time, a different administrative law judge upheld the award. Two parts of the judge's reasoning matter now: the judge held that Reed qualified for the 15-year presumption and that Ken Lick qualified as the responsible operator.

*Presumption.* The new judge held that Reed had performed coal-mine work for 15 years and could invoke the presumption that he was totally disabled due to pneumoconiosis. This change rested in part on an intervening decision about the meaning of a "year." The regulations define a "year" as "a period of one calendar year (365 days, or 366 days if one of the days is February 29), or partial periods totaling one year, during which the miner worked in or around a coal mine or mines for at least 125 'working days.'" 20 C.F.R. § 725.101(a)(32). They further clarify that "if the evidence establishes that the miner worked in or around coal mines at least 125 working days during a calendar year or partial periods totaling one year, then the miner has worked one year in coal mine employment for all purposes under the Act." *Id.* § 725.101(a)(32)(i). The Board traditionally read this text to require miners to have been employed by a company for 365 days *and* to have worked 125 days around coal mines. *See Clark v. Barnwell Coal Co.*, 2003 WL 22696401, at *3 (Ben. Rev. Bd. Apr. 30, 2003). In *Shepherd v. Incoal, Inc.*, 915 F.3d 392 (6th Cir. 2019), however, we held that miners could prove that they worked a "year" for a company by proving *only* that they "worked at least 125 days in or around coal mines" for that company. *Id.* at 401. *Shepherd* thus reduced the days of employment necessary to qualify for a "year" of work.

Given *Shepherd*, the administrative law judge credited Reed with over 16 years of coal-mine employment. This number rested on Reed's employment with the companies at which he had worked after he left Ken Lick: Green Valley and JPR. The judge found that Reed had worked over 2.5 years for these companies, including over a year for Green Valley. Apart from Reed's length of employment, the conditions of his work for the two companies also had to be "substantially similar to conditions in an underground mine" for that work to count toward the 15-year presumption. 30 U.S.C. § 921(c)(4); *Brandywine Explosives & Supply v. Dir., Off. of Workers' Comp. Programs*, 790 F.3d 657, 664–65 (6th Cir. 2015). And problematically for

Reed, he had marked on a questionnaire during his second claim that the reclamation work did not qualify as "coal mine employment[.]" Pet. App'x 55. But the judge said that Reed's later testimony about his jobs showed that the work did qualify. The judge thus overlooked this earlier concession.

*Responsible Operator*. *Shepherd*'s redefinition of a year had the potential to help (not just hurt) Ken Lick. Recall that the regulations identified *potentially liable* operators as those that (among other things) employed the miner for at least a year. 20 C.F.R. § 725.494(c). And recall that the regulations picked out the *responsible* operator from among all potentially liable ones based on which of them "most recently employed the miner." *Id.* § 725.495(a)(1). So the finding that Reed had worked for Green Valley for at least a year after he had worked for Ken Lick suggested that Green Valley was the responsible operator. This conclusion would render the Trust Fund liable for the benefits since the district director had found Ken Lick to be responsible. *See* 26 U.S.C. § 9501(d)(1)(B). Indeed, the administrative law judge acknowledged that his findings showed that the liability should be "transferred" to the Trust Fund. Pet. App'x 136 n.4.

But the judge refused to make this transfer. He relied on Ken Lick's conduct during the litigation over Reed's second claim back in 2007. Ahead of the hearing on that second claim, Ken Lick's lawyer told the prior administrative law judge that the company would "*not* be contesting" the district director's responsible-operator designation. Letter, LM-2 at 237. The administrative law judge in the third claim treated this statement as a "stipulation" that Ken Lick qualified as the responsible operator. Pet. App'x 134. And the regulation suggested that the earlier "stipulation" was "binding" in later proceedings. 20 C.F.R. § 725.309(c)(5). Citing this regulation, the judge held that Ken Lick could no longer dispute its responsible-operator status. The Board affirmed.

II

A

Ken Lick now petitions this court for review. Its petition raises a narrow question: Did the administrative law judge properly prohibit Ken Lick from challenging its responsible-

operator status in the litigation over Reed's third claim due to the company's prior "stipulation" that it was the responsible operator?

The answer to this question starts with the regulation that governs subsequent claims filed after a first claim has been denied. Under that regulation, miners may litigate a subsequent claim if they show that one of the relevant "conditions of entitlement . . . has changed" since the denial of a prior claim. *Id.* § 725.309(c). Reed showed this change here. The prior administrative law judge denied his second claim on the ground that he did not have pneumoconiosis. But the new judge adjudicating his third claim invoked the 15-year presumption to find that Reed established that he now suffered from this disease. Given this change, the regulation allowed the parties to relitigate all issues with certain exceptions:

> If the claimant demonstrates a change in one of the applicable conditions of entitlement, no findings made in connection with the prior claim, except those based on a party's *failure to contest* an issue (see § 725.463), will be binding on any party in the adjudication of the subsequent claim. However, any *stipulation* made by any party in connection with the prior claim will be binding on that party in the adjudication of the subsequent claim.

*Id.* § 725.309(c)(5) (emphases added).

The highlighted language carves out an omission-based and an act-based exception to the general rule that parties may relitigate all issues in proceedings on later claims. Start with the omission-based exception. The regulation suggests that a "failure to contest an issue" in a prior proceeding might bar a party from litigating that issue in later litigation. *Id.* Yet the regulation also cites "§ 725.463" for this point. *Id.* So this separate section clarifies what a party must do to "fail[] to contest an issue" within the meaning of the regulation. *Id.*; *see Ark. Coals*, 739 F.3d at 320. Section 725.463 tells district directors to identify the "contested issues" for the administrative law judge when transferring the case to that judge. 20 C.F.R. § 725.463(a). It adds that the hearing before that judge generally "shall be confined" to these issues along with any other issues "raised in writing before the district director." *Id.* If a party does not contest an issue before a district director in an initial claim, then, the party may lose the ability to contest that issue not just before the administrative law judge but also in later claims. *Id.* § 725.309(c)(5).

Here, however, neither party suggests that this omission-based exception applies.  To the contrary, the district director listed Ken Lick's responsible-operator status as a "[c]ontested" issue for the administrative law judge to consider during Reed's second claim.  Referral, LM-2 at 449; *see Ark. Coals*, 739 F.3d at 320.  Besides, § 725.463 also gives an administrative law judge discretion to consider an issue that a party did not raise with the district director in certain circumstances.  *See* 20 C.F.R. § 725.463(b).  Yet the administrative law judge did not consider this safe harbor.  All told, we need not decide when—if ever—a party's mere failure to raise an issue with a district director in a prior proceeding bars the party from raising that issue in a later claim.

The parties instead focus on the act-based exception.  The regulation also says that a party's "stipulation" during the litigation over a prior claim will continue to "bind[]" the party in litigation over a "subsequent claim."  *Id.* § 725.309(c)(5).  What is a "stipulation"?  Because this word represents a "legal term of art," we presume that it takes on its legal meaning.  *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012).  In litigation, the word refers to a "voluntary agreement between opposing parties concerning some relevant point[.]" *Black's Law Dictionary* 1427 (7th ed. 1999); *see* 22A Charles A. Wright et al., *Federal Practice and Procedure* § 5194, at 51 (2d ed. 2014); 83 C.J.S. *Stipulations* § 1, Westlaw (database updated Dec. 2024).  So if parties stipulate to a fact, they enter an "express waiver . . . conceding for the purposes of the trial the truth of" that fact.  *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 9 John Henry Wigmore, *A Treatise on the System of Evidence in Trials at Common Law* § 2588, at 821 (J. Chadbourn rev. 1981)).

Did Ken Lick's conduct during the proceedings on Reed's second claim fall within this understanding of "stipulation"?  Consider the company's conduct: It initially told the district director that it was contesting its responsible-operator status.  But its counsel then sent the administrative law judge a letter before the administrative hearing "to confirm that we will *not* be contesting Ken Lick Coal's designation as the responsible operator."  Letter, LM-2 at 237.  At the start of that hearing, counsel reiterated: "We are not contesting the designation of Ken Lick Coal as the Responsible Operator."  Tr., LM-2 at 224.  Ken Lick instead chose to focus its

defense on whether Reed had established the four elements necessary to prove his eligibility for benefits.

We see several potential problems with treating this conduct as a "stipulation" that Ken Lick was the responsible operator. For one thing, a distinction may well exist between a mere failure to present evidence to dispute some fact (what Ken Lick arguably did) and an "express waiver" affirmatively agreeing to the fact's existence (what a stipulation entails). *Standard Fire*, 568 U.S. at 592 (citation omitted). The former action (an omission) may still require the party with the burden of proof to introduce evidence to prove the fact. *See* Wigmore, *supra*, § 2588, at 821–22. After all, this party will lose if it does not present adequate evidence—even if the other side offers *no* contrary evidence of its own. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In contrast, the latter action (an admission) takes the fact off the table "so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it." Wigmore, *supra*, § 2588, at 821. In other words, when parties enter a stipulation, they must automatically accept "the truth of the facts stated" in the stipulation. *Christian Legal Soc'y. Chapter of Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 667 (2010) (citation omitted).

For another thing, courts have suggested that "it takes two to tango" and thus "that both parties must agree to the stipulation." 22A Wright, *supra*, § 5194, at 54; *see* 83 C.J.S. *Stipulations*, *supra*, § 1. Here, however, the administrative law judge did not identify any "agreement" between Ken Lick and Reed that Ken Lick was the responsible operator. *Black's Law Dictionary*, *supra*, at 1427; *cf. Old Chief v. United States*, 519 U.S. 172, 200 (1997) (O'Connor, J., dissenting). At most, Ken Lick conveyed a "unilateral description of one side's position." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (Easterbrook, J.). Indeed, Reed later made arguments that conflicted with this "stipulation." To take advantage of the 15-year presumption, he argued that he had additional years of qualifying work with Green Valley and JPR. ALJ Op., LM-2 at 90. But those arguments meant that Ken Lick was not the "responsible operator."

For a third, the regulation may well be unprecedented. Each of Reed's three requests for benefits between 1986 and 2018 counted as distinct "claims" because he needed to show changed circumstances each time. *See Buck Creek Coal*, 706 F.3d at 759. As a result, the

ordinary rules of claim preclusion did not bar Reed from pursuing the latter two claims. *See id.* at 759–60. Yet the Department of Labor (through the Director of the Office of Workers' Compensation Programs) identifies no decision that has ever found that a stipulation bound a party not just in the case in which the party entered the stipulation but also in another case about a different claim. *Cf.* 73 Am. Jur. 2d *Stipulations* § 9, Westlaw (database updated Jan. 2025). This fact might suggest that we should read the regulation's use of the word "stipulation" with care.

All this said, neither Ken Lick nor the Department of Labor attempted to interpret the word "stipulation" in § 725.309(c)(5). Rather, both sides assumed that Ken Lick entered a "stipulation" when it chose not to contest its responsible-operator status. *See* Petitioners' Br. 7; Respondent's Br. 18. We thus will assume that this choice did, in fact, rise to the level of a "stipulation."

B

Ken Lick offers two reasons why the administrative law judge should have overlooked the "stipulation." The company first suggests that the judge committed a manifest injustice by holding it to the stipulation. It alternatively argues that parties cannot enter binding stipulations about the law and that the stipulation here extended beyond the facts.

1. Manifest Injustice

Ken Lick initially asks us to adopt a "manifest injustice" exception to the requirement that stipulations made when litigating earlier claims bind parties in litigation over later ones. This exception allegedly applies because Ken Lick says that a change in law occurred in between Reed's second and third claims. At the time of his second claim, the Board interpreted the definition of "year" in 20 C.F.R. § 725.101(a)(32) to require an employer to have employed a miner for a calendar year. *See Clark*, 2003 WL 22696401, at *3. At the time of his third claim, though, *Shepherd* held that a miner need only perform coal-mine work for 125 days to work a "year" for a coal company under that regulation. *See* 915 F.3d at 401. According to Ken Lick, a refusal to account for this changed reading would cause manifest injustice. In response, the Department of Labor concedes that we may overlook stipulations in exceptional circumstances.

But it suggests that the second administrative law judge's use of *Shepherd* did not rise to the manifest-injustice level because Ken Lick could have argued for this interpretation all along.

Who has the better of this dispute?  The answer is debatable.  On the one hand, Ken Lick's request for a "manifest injustice" exception does not fit well with the regulation's language.  That language categorically suggests that stipulations "will be binding" on a party in litigation over later claims.  20 C.F.R. § 725.309(c)(5).  It contains no express exceptions to that mandate, whether to avoid a manifest injustice or for any other reason.  *Cf. Ross v. Blake*, 578 U.S. 632, 639 (2016).  And even if we could invalidate the stipulation to avoid a manifest injustice, our caselaw in other contexts has taken a narrow view on when changed judicial interpretations can afford parties relief.  We have held, for example, that criminal defendants may not avoid contractual waivers of a right to seek collateral relief even when an intervening precedent might render this relief "more valuable" to them.  *Portis v. United States*, 33 F.4th 331, 335–38 (6th Cir. 2022).  And others have recognized that "a change in judicial doctrine" does not necessarily amount to "a change in law."  *Lester v. United States*, 921 F.3d 1306, 1312–13 (11th Cir. 2019) (Pryor, J., respecting the denial of rehearing en banc).  That is, even if *Shepherd*'s reading departed from a prior judicial understanding of the definition of a "year," the regulation itself remained the same all along.

On the other hand, courts read statutory text (and presumably regulatory text) against "common-law adjudicatory principles."  *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).  That is why claim and issue preclusion rules might apply to federal statutes even if Congress says nothing on the subject.  *See Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018).  And courts have long held that they will not hold parties to a stipulation if doing so would cause a "manifest injustice."  *Fairway Constr. Co. v. Allstate Modernization, Inc.*, 495 F.2d 1077, 1079 (6th Cir. 1974) (per curiam); *see* 83 C.J.S. *Stipulations*, *supra*, § 93.  A court might relieve a party from a stipulation based on, for example, "events that intervened since the making of the stipulation," "a change in the applicable law," or even a mere "mistake of law."  22A Wright, *supra*, § 5194.3, at 71.  And perhaps we could read this historical discretion back into the regulation since it says that a party's stipulation will be binding "*on that party*," not on the *administrative law judge*.  20 C.F.R. § 725.309(c)(5) (emphasis added).

At day's end, we opt to save all these issues for another day. Ken Lick has made arguments in the alternative. And we find its second argument the clearest path to our decision.

## 2. Stipulations of Law

Ken Lick next suggests that the administrative law judge wrongly found a stipulation of law binding. This argument has firmer footing. When the Department of Labor used the phrase "stipulation" in § 725.309(c)(5), the average lawyer with knowledge of this specialized word would likely have read it to cover only the types of "voluntary agreement[s]" that courts would enforce. *Black's Law Dictionary*, *supra*, at 1427. A contrary view would mean the agency meant to bind a party in a later proceeding to an agreement that a court would "treat . . . as a nullity" in the very proceeding in which the party entered the agreement. *Swift & Co. v. Hocking Valley R. Co.*, 243 U.S. 281, 289 (1917). No interpreter would read the word this way. Instead, we take the "legal term of art" to cover only *enforceable* agreements. *Cooper*, 566 U.S. at 292.

This reading makes a difference. Well before the Secretary of Labor adopted the regulation, courts had placed "several limits" on parties' ability to stipulate about how litigation would proceed. 22A Wright, *supra*, § 5194.1, at 60. Of most relevance, courts would not accept the parties' "stipulations as to questions of law." *Sanford's Est. v. Comm'r*, 308 U.S. 39, 51 (1939) (citing *Swift*, 243 U.S. at 289); *Garcia v. United States*, 469 U.S. 70, 78–79 (1984); *Young v. United States*, 315 U.S. 257, 258–59 (1942); *see* 83 C.J.S. *Stipulations*, *supra*, § 28; 22A Wright, *supra*, § 5194.1, at 60. That is, the parties could not bind courts to accept their view of the "legal effect" of the historical facts. *Swift*, 243 U.S. at 289; *see Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 622 (1996) (opinion of Breyer, J.).

Indeed, we have already made this point in a black-lung case. *See Navistar, Inc. v. Forester*, 767 F.3d 638, 643–44 (6th Cir. 2014). In *Navistar*, a coal-mine operator stipulated that a miner had 17 years of coal-mine employment. 767 F.3d at 642. That stipulation triggered the 15-year presumption. *See id.* at 643. After the operator stipulated to this fact, though, it backtracked. The record showed that the miner had worked five years for the operator's predecessor. *Id.* at 641. But it also showed that he had worked over a decade as a mine inspector for a federal agency. *Id.* The operator claimed that the latter work did not count as

coal-mine work and so did not trigger the 15-year presumption.   *Id.* at 642–43.   An administrative law judge disagreed and held the operator to its earlier stipulation.   *Id.* at 643.   Yet we rejected the view that this stipulation bound the operator on the legal question whether the work as a federal mine inspector qualified as coal-mine work.   *Id.* at 643–44.   And because we held that this work did not qualify, we reversed the judge's decision to apply the 15-year presumption.   *See id.* at 644–47.

This case is easier than *Navistar*.   There, the coal-mine operator agreed to what appeared to be a *factual* stipulation: that the miner had 17 years of coal-mine work.   But we refused to accept this stipulation because it rested on a *legal* error.   *Id.* at 643–44.   Here, by contrast, Ken Lick said only that it would not contest the ultimate "conclusion[]" that it qualified as the responsible operator.   *United States v. Cabbage*, 91 F.4th 1228, 1231 (6th Cir. 2024).   Ken Lick did not stipulate to a single fact relevant to that conclusion.   For example, it did not stipulate that Reed had worked for Green Valley for less than a year.   And it did not stipulate that his reclamation work for Green Valley fell outside the definition of coal-mine employment.   To the contrary, the parties litigated these issues.   And the administrative law judge found that Reed had worked at Green Valley for over a year and had performed coal-mine work.   Those findings even led the judge to conclude that Ken Lick would not have qualified as the responsible operator but for its stipulation.   Pet. App'x 135 n.4.   At most, then, Ken Lick stipulated only to the proper "legal effect" of the historical facts that the administrative law judge found.   *Swift*, 243 U.S. at 289.   But this type of legal stipulation did not bind the judge.   *See id.*

The administrative law judge's own analysis confirms this point.   Recall that Reed had stated on a questionnaire when pursuing his second claim that his work for Green Valley did not qualify as "coal mine employment[.]"   Pet. App'x 55.   But the judge did not view Reed as bound by this "stipulation" when allowing him to invoke the 15-year presumption.   The judge reasoned that the question whether Reed's work qualified as coal-mine employment amounted to "a mixed question of fact and law," not a fact question.   Pet. App'x 133.   And Reed would not have known the proper "legal characterization" of his duties.   *Colo. Republican Fed. Campaign Comm.*, 518 U.S. at 622 (opinion of Breyer, J.).   Yet the same logic applied to Ken Lick.   The question whether it was the responsible operator contains factual and legal components.   As for the facts:

How long did Green Valley employ Reed?  And what type of work did he perform?  As for the law: What does the regulation mean when it requires a miner to have worked "one year" for a company?  20 C.F.R. § 725.494(c).  And what does it mean when it requires the miner to have been in "employment in or around a mine"?  *Id.* § 725.494(a).  Because the parties litigated the facts that mattered to these questions, Ken Lick's concession (like Reed's) involved the law—not the facts.

In response, the Department of Labor attempts to distinguish *Navistar*.  That case addressed whether to apply the 15-year presumption whereas this case addresses whether Ken Lick qualifies as the responsible operator.  The Department calls the latter question a "highly fact-bound inquiry" that we review for substantial evidence.  Respondent's Br. 21–22 n.8.  Like the question in *Navistar*, though, this question still contains legal and factual parts.  And yes, we would review a finding about the factual components for substantial evidence.  *See Ark. Coals*, 739 F.3d at 322.  But the parties litigated over these components.  So their stipulation covered only the "*legal* question" about whether the undisputed facts made Ken Lick the responsible operator.  *Navistar*, 767 F.3d at 644.  They did not.  And more importantly, Ken Lick could not stipulate to this question in a way that would bind the administrative law judge.  *See id.*  So when the judge found that the company was not the responsible operator, he should have enforced that conclusion.

The Department next suggests that the Tenth Circuit has upheld a coal company's stipulation that it qualified as the responsible operator.  *See Rockwood Cas. Ins. Co. v. Dir., Off. of Workers' Comp. Programs*, 917 F.3d 1198, 1215–18 (10th Cir. 2019).  But *Rockwood* looks nothing like this case.  There, the coal company told the district director that it qualified as the responsible operator.  *Id.* at 1207.  Its insurer later switched gears before the administrative law judge and challenged this designation.  *Id.* at 1208.  Yet the exhaustion regulation (§ 725.463) notes that the hearing before that judge generally "shall be confined" to the issues the parties contested before the district director unless a new issue "was not reasonably ascertainable" at that time.  20 C.F.R. § 725.463(a)–(b).  The administrative law judge refused to consider the responsible-operator issue because the company could have ascertained the key facts about that issue when the claim was pending with the district director.  *Rockwood*, 917 F.3d at 1208.  The

Tenth Circuit agreed with what looks like garden-variety forfeiture analysis. *See id.* at 1216–18. Unlike in this case, the Tenth Circuit did not interpret the meaning of the word "stipulation" in § 725.309(c)(5) or consider when conduct in litigation over one claim should bind a party in later litigation over a different claim. And unlike in *Rockwood*, Ken Lick has always contested its responsible-operator status with the district directors in Reed's various claims. Because it preserved this issue, its conduct did not implicate the exhaustion rule in § 725.463.

That fact brings us to a final point. Just because the parties cannot enter stipulations that bind a judge on the law does not mean that a judge must resolve all unbriefed legal questions and ignore ordinary forfeiture and waiver rules. To the contrary, the "party presentation principle" applies just as much to legal questions as it does to factual ones. *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). But the administrative law judge concluded here that he lacked any discretion to depart from what turns out to have been a stipulation of law. The judge was wrong. *See Swift*, 243 U.S. at 289. And the judge made clear how he would have ruled if this stipulation did not apply: "For purposes of judicial review," the judge said, he would have found that Ken Lick was not the responsible operator if he did not have to enforce the stipulation. Pet. App'x 135–36 n.4.

We grant Ken Lick's petition for review and order the Trust Fund to pay Reed's benefits.